*[1085]
 
 SCHWAB, C. J.
 

 Defendant appeals from her conviction by a jury of criminal activity in drugs, ORS 167.207, and assigns as error the court’s denial of her motion to suppress evidence.
 

 On September 8, 1976, six police cars followed one Jay Bolton to defendant’s residence. Bolton was under surveillance at the time because the police had information that he was going to purchase cocaine with marked money. Two minutes after the police began watching the house, one Gary Schnabel entered the house. Eight minutes later, Bolton left and was followed by the police to his residence where he was searched. A packet of white powder which field-tested as cocaine was found on Bolton.
 

 After returning to defendant’s residence, the officer in charge of the operation, Deputy Sheriff Guth, requested that the sheriff’s office obtain a warrant to search the house. While waiting for the warrant, the six officers kept the house under surveillance. During that period, the officers noted no activity which would lead them to believe that their surveillance had been discovered nor did they testify that they noted anything which indicated to them exigent circumstances requiring immediate action. Nonetheless, before a search warrant arrived, Guth decided that the officers should "secure the residence.” Guth testified that "securing the residence” meant entering the house, without consent if necessary, and placing "everybody in one portion or in one area of the house.” Another police officer testified that there was no indication that the officers were going to encounter any resistance from the occupants of the house.
 

 Guth and two other officers approached the house and knocked on the door. A male voice said "come in.”
 
 [1]
 
 
 *[1086]
 
 The officers entered the living room where they saw a male later identified as Schnabel. Guth continued across the living room without stopping and entered an adjoining bedroom. There Guth spotted the defendant sitting on a bed with white powder and drug paraphernalia arrayed on a mirror before her. Guth testified that the materials on the mirror were not visible from any vantage point in the living room.
 

 Guth told defendant that he had sent for a search warrant, and defendant then consented to a search of the rest of the house. The search produced a quantity of cocaine, the marked money and some marihuana. No warrant to search the house was ever obtained.
 

 The entry into the living room was invited. The validity of the seizures depends upon the validity of the movément of the police beyond the living room.
 

 A nonconsensual warrantless search and seizure has been termed a "per se * * * unreasonable governmental intrusion,” and the state has the burden of establishing the validity of such an intrusion.
 
 State v. Gilbert,
 
 24 Or App 907, 911, 547 P2d 632,
 
 rev den
 
 (1976). In order to justify a nonconsensual warrantless search two conditions must be met. First, there must be probable cause to believe that a search of the person or place in question will result in the finding of evidence of crime. Second, there must be exigent circumstances which outweigh the need for judicial scrutiny of probable cause which the search-warrant-application process provides.
 
 State v. Poole,
 
 11 Or App 55, 500 P2d 726,
 
 rev den
 
 (1972);
 
 State v. Keith, 2
 
 Or App 133, 465 P2d 724,
 
 rev den
 
 (1970). Defendant here, does not contend that there was no probable cause to search the house; rather, she contends that there were no exigent circumstances which obviated the need to obtain a search warrant.
 

 The state makes but one argument concerning exigent circumstances — that "the officers were entitled for their own safety to make the short walk
 
 *[1087]
 
 from the living room and look through the doorway.” The officers entered the house not pursuant to any exigent circumstances justifying a warrantless search, but, rather, out of a desire to "secure the residence.”
 

 If the officers, while conducting their lawful surveillance of the house, had noticed any activity which could be construed as raising a reasonable possibility of loss of evidence, then exigent circumstances would have come into being which would have justified the warrantless search.
 
 See State v. Girard,
 
 276 Or 511, 555 P2d 445 (1976). Absent exigent circumstances, the officers were required to await a warrant prior to searching the house. We find no justification for the intermediate step of "securing the residence” and by this "bootstrapping” device creating the exigent circumstances. The act characterized as "seeming” was a search and seizure and must be justified accordingly.
 

 The state also contends that the items seen by Guth in the bedroom were within his plain view. In
 
 Coolidge v. New Hampshire,
 
 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971), the Supreme Court held that no warrant is required for the seizure of items where a police officer "had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused.” 403 US at 466. Thus, the requirement for the invocation of the plain-view rule is that the police officer must be where he has a right to be at the time he sees the evidence.
 
 See State v. Keller,
 
 265 Or 622, 510 P2d 568 (1973);
 
 State v. Plant,
 
 28 Or App 771, 561 P2d 647 (1977);
 
 State v. Schrag,
 
 21 Or App 655, 536 P2d 461,
 
 rev den
 
 (1975). Here, the state does not contend that the scope of the invitation to the officers to enter the house extended to more than entry into the living room. Further, Guth testified that the items he found in the bedroom were not visible from the living room. When Guth entered the bedroom he exceeded the scope of his invitation to enter the house and thus went where he had no right to go.
 
 Compare State v. Alexander,
 
 9 Or App 42, 495
 
 *[1088]
 
 P2d 51,
 
 rev den
 
 (1972). Consequently, the plain-view doctrine is not applicable.
 

 The incriminating evidence seized in the bedroom and as a result of the subsequent search must be suppressed, because it was seized pursuant to an improperly obtained consent.
 
 Wong Sun v. United States,
 
 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963).
 

 Reversed and remanded for new trial.
 

 [1]
 

 Deputy Sheriff Guth testified that a female voice from the rear of the house also said "come in.” The trial judge found that the state failed to prove that Guth heard such a voice.