Argued October 16; resubmitted in banc December 12, reversed and
remanded for new trial December 18, 1978, petition for
reconsideration granted February 20, 1979

STATE OF OREGON, *Respondent,*
*v.*
JEFFREY DALE WARD, *Appellant.*
(No. 78-1315, CA 11299)
588 P2d 72

Thomas L. Fagan, Eugene, argued the cause for appellant. With him on the brief was Fagan, Hoffman & Klarr, Eugene.

Catherine Allan, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

JOHNSON, J.

## JOHNSON, J.

Defendant was convicted of Ex-convict in Possession of a Firearm. ORS 166.270. He assigns as error the trial court's denial of his motion to suppress (1) statements made during the interrogation by law enforcement officers and (2) the firearm discovered by the officers in searching his automobile.

At about 3:15 a.m. on February 12, 1978, a Jeffrey O'Keefe, was arrested for burglary and robbery. The police desired to obtain evidence concerning some beer, money, and several rifles and shotguns that O'Keefe was suspected of having stolen. Sometime after 11:30 a.m. application was made for a warrant to search O'Keefe's residence.

At 8:45 a.m. on February 12, 1978, Sergeant Smith of the Springfield Police directed that O'Keefe's residence be "secured." Five police officers then proceeded to pound on the door. When the door was opened by one of the occupants, the officers entered without invitation, proceeded to look throughout the house, wake the other three occupants, including defendant, and required that they station themselves in the living room. The officers then advised the occupants that the house was being secured for a search warrant pertaining to Jeffrey O'Keefe, and that the warrant would be there in a "couple of hours." The occupants were required to remain in the living room except that they could move about one at a time, but at no time, including during visits to the bathroom, were they permitted to be outside the presence of a police officer. The occupants of the house were the defendant Jeffrey Ward, his wife and two of defendant's stepsons. Jeffrey O'Keefe was also a stepson of defendant.

The search warrant was issued at about 1:00 p.m. The affidavit for the warrant was executed by officer Smith. It describes two robberies, one that occurred on February 4, 1978, and the other at 12:30 a.m. on the day of O'Keefe's arrest, the property stolen, i.e., beer, money, rifles and shotguns, and the circumstances

[ 593 ]

implicating O'Keefe. The affidavit asserts that because of the place where O'Keefe was apprehended and based upon Smith's experience, it was likely that the stolen property would be located at O'Keefe's residence. Also described by make, model, and license number are three vehicles that were parked in the driveway, in front of the residence, and across the street, respectively. The affidavit recites that the last car was registered in the name of "John C. Ward" at the same address as O'Keefe's.

The affidavit then goes on to state:

"That the above-described residence was secured by members of the Springfield Police Department at 8:45 a.m. The SPD officers have informed me that as of 11:30 a.m. on the 12th of February, 1978, there are four individuals currently inside the above-described residence who were present when the officers arrived.

"In plain view inside the residence are numerous empty Budweiser beer bottles. The four persons inside the residence have been identified as Thomas James O'Keefe, Denny Patrick O'Keefe, Jeffrey Dale Ward and Delores M. Ward."

It was apparent that the quoted information was obtained as a result of the search and inquiries that occurred after the entry of the O'Keefe residence at 8:45 a.m. The affidavit authorized a search of the residence, the vehicle, and the occupants of the house.

At about 1:50 p.m., Officer Smith and a deputy district attorney arrived and served the warrant. At this time the occupants were jointly informed of their *Miranda*[1] rights. At 2:10 p.m. Smith requested defendant to accompany him to his police car in order that he could question him. They were accompanied by the deputy district attorney. Defendant was again advised of his rights. The officer first asked the defendant about the activities of the family members on the night before. After that discussion he then asked defendant if there were any firearms in the residence,

---

[1] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

to which defendant responded he had a .22 caliber pistol in the trunk of his car. Defendant went on to mention that he had intended to have it registered in his mother's name. The officer then asked why the need for a change in registration. Defendant replied that he had been convicted of a crime in California. The officer then requested and received defendant's consent to a search of the trunk. At the time of this interrogation the police had not discovered any of the stolen property in the residence, defendant was not a suspect, and the police were neither aware nor did they suspect that defendant had a firearm or that he was an ex-convict.

■ The state attempts to justify the "securing" of the residence on the grounds that it was valid as a warrantless search as there was probable cause to believe there was stolen property on the premises and there were exigent circumstances. Assuming arguendo there was probable cause by virtue of the matters described in the affidavit for the search warrant, there is no evidence in the record of exigent circumstances. Indeed, the only evidence presented by the state was the testimony of two officers and the deputy district attorney, who were not present until the search warrant was served. With respect to the events that transpired before 1:50 p.m., Officer Smith testified that he did order the premises "be secured" at 8:45 a.m., but gave no further explanation. The testimony of the occupants describing what occurred between 8:45 a.m. and 1:50 p.m. was undisputed.

■ Furthermore, even assuming there were grounds for a warrantless search, the conduct of the police here also constituted an illegal arrest. Defendant and the other occupants were held in house arrest for over five hours. The restriction on their liberty was substantial. The police, by their own admission, had no probable cause to make an arrest of defendant or of any of the other occupants of the house.

 The state also argues that the search of defendant's car was valid because of the warrant. While the warrant may have been valid as to the residence, *see State v. Skinner,* 5 Or App 259, 483 P2d 87 (1971), it was invalid as to the vehicles and the occupants. The fact that an automobile was parked across the street from the suspected robber's residence and was registered in the name of a person who has no apparent relationship with the suspect other than the same residence address, is not probable cause to search the vehicle. With respect to the occupants of the house, the only information in the affidavit concerning their identity and relationship to the suspect was the result of the illegal search and arrest. This "boot-strapping device" of relying on an illegal "securing" of the premises to sanitize the affidavit will not wash. *See State v. Drouhard,* 31 Or App 1083, 1087, 572 P2d 331 (1977), *rev den* (1978).

█ The question remains whether, in spite of the illegal police conduct, defendant's statements to the officers and the subsequent consent to search were sufficiently voluntary to remove the taint, particularly in light of the *Miranda* warning. The trial court concluded that the defendant acted voluntarily. We have accepted the trial court's findings as to the historical facts, but whether or not the waiver and consent were voluntary is a question of law that we must decide.[2] *See State v. Warner,* 284 Or 147, 585 P2d 681 (1978). In *Brown v. Illinois,* 422 US 590, 95 S Ct 2254, 45 L Ed 2d 416, the Supreme Court, rejecting the "but for" test for determining voluntariness, stated:

> "* * * The question whether a confession is a product of a free will under Wong Sun must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a

---

[2]The evidence concerning the historical facts was largely undisputed, with the exception that there was conflicting evidence as to whether the *Miranda* warnings were ever given. The trial court found that the warnings were given in the manner stated in the opinion.

talismanic test. The Miranda warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, (footnote omitted) the presence of intervening circumstances, * * * and, particularly, the purpose and flagrancy of the official misconduct are all relevant. * * * The voluntariness of the statement is a threshold requirement. * * * And the burden of showing admissibility rests, of course, on the prosecution." 422 US at 603-04, 45 L Ed 2d at 427. (citations omitted)

■ The official misconduct here was flagrant. The police committed what amounted to an illegal entry and search of defendant's home and then illegally detained defendant and the other occupants for over five hours. It was purposeful. The only purported justification was to "secure" the premises for a search warrant that was not even applied for until at least 3 hours after the initial entry. Suffice it to say there is no exception to the Fourth Amendment for "securing" a person's home in the manner described. We conclude that the statements made to the officers and the consent to search were not voluntary. The police had already illegally searched defendant's home. He and his family had been held in house arrest for over five hours. He was then confronted with a search warrant which officially purported to authorize a search of his automobile. Considering the totality of the circumstances, a reasonable person placed in defendant's predicament would conclude that standing on one's constitutional rights and refusing to consent to a search would be a futile and counterproductive gesture. The state has not carried its burden of proof.

Reversed and remanded for new trial.

GILLETTE, J., dissenting.

Even a casual reading of this case shows that the majority has permitted its outrage with what the

police did to obscure the legal principles we are called upon to rationally and dispassionately apply:

1. "Five police officers proceeded to pound on the door." (Slip opinion at 1.) Aside from creating a rather comical picture of five men simultaneously assaulting one door, this version of the facts is not totally supported by any of the witnesses. No one agrees how many officers were present. Two witnesses—whom the trial judge apparently disbelieved in other respects— claim someone "pounded" on the door. The defendant himself said someone "knocked."

2. "The official misconduct here was flagrant * * *. It was purposeful." (Slip opinion at 6.) Unless all clearly illegal conduct is *per se* "flagrant," this over-states. What the officers did was wrong, without question, but they did it without harassing tactics. Once the incorrect decision to "secure" had been made, there is nothing in this record to suggest the officers behaved in a manner which would have been deemed unreasonable if the "securing" *had* been justified. In fact the majority, which decries "bootstrapping" (slip opinion at 5), uses the very language quoted above in an attempt to "bootstrap" its way under the rhubric of *Brown v. Illinois,* 422 US 590, 603-604, 95 S Ct 2254, 45 L Ed 2d 416 (1975):

> "* * * The question whether a confession is a product of a free will under Wong Sun must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. The Miranda warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, (footnote omitted) the presence of intervening circumstances, * * * and, particularly, the purpose and flagrancy of the official misconduct are all relevant. * * * The voluntari-ness of the statement is a threshold requirement. * * *

And the burden of showing admissibility rests, of course, on the prosecution." 422 US at 603-04, 45 L Ed 2d at 427. (Citations omitted.)

*Brown v. Illinois* dealt with a fact situation quite unlike this one; a fact situation which demonstrated what the Supreme Court meant by using such words as "purposeful" and "flagrant." In *Brown,* defendant was arrested without a warrant and without probable cause. He was given his *Miranda* warnings. While still in custody, he made two inculpatory statements. The entire sequence of events—illegal arrest at gunpoint, interrogation in a closed room at the police station, his first confession, his participation with the arresting officers in the search for an accomplice and his second confession all followed in unrelieved fashion. The Court specifically noted,

"The manner in which Brown's arrest was effected gives the appearance of having been calculated to cause surprise, fright and confusion." *Id.,* at 605.

Nothing that followed the arrest gave rise to an opportunity for defendant to reassess his situation.

In this case, in contrast to *Brown,* a sufficient length of time transpired following the original illegal entry to permit sober reflection and a calming of the nerves. Further, defendant was advised of his *Miranda* rights at the time the search warrant was served, then later *readvised and told he was not then under arrest* in an interview which took place in a car outside defendant's home. It was still later, after being so advised, that he finally made the statements which led to the discovery of the firearm. At the time he gave them, he knew he was not a suspect. In fact, it was clear from the context in which the question about guns was asked that the officers were simply trying to find weapons defendant's stepson may have used in commiting armed robbery. They were not looking for anything to incriminate defendant. The illegality of an arrest will not necessarily vitiate the admissibility of statements made thereafter where intervening

[ 599 ]

*Miranda* warnings have been given. *Brown v. Illinois, supra,* 422 US at 605.[1]

As I understand *State v. Warner,* 284 Or 147, 585 P2d 681 (1978), our function in reviewing for constitutional error is to take the facts as found by the trier of fact, analyze them in light of the relevant constitutional principles, and then adopt as our holding the *most reasonable* construction to be given those facts in deciding such ultimate, "constitutional" facts as voluntariness. In my view, the *most* reasonable *construction of the facts* here is that defendant fully knew what his rights were and chose to talk. The majority view on this point is also reasonable, but barely so.

As to the search of the car trunk, the majority's view is not reasonable at all. Not only had defendant been advised of his *Miranda* rights and that he was not under arrest, but he was also twice told—once verbally and once in writing—that he did not have to consent to the search. This advice was more than he was entitled to—*see State v. Douglas,* 260 Or 60, 72-74, 488 P2d 1366 (1971), *see Schneckloth v. Bustamonte,* 412 US 218, 93 S Ct 2041, 36 L Ed 2d 854 (1973)—and far more than enough to attenuate any taint from his arrest.

On this record, I would hold that the statements and the gun were properly received in evidence, and would affirm.

I respectfully dissent.

Schwab, C. J., Thornton and Joseph, Judges, join in this dissent.

---

[1]The majority also neglects to mention one very important factor: in this case, unlike most cases, defendant testified at the motion to suppress. His testimony specifically covered the time during which he made the incriminating statements about the gun, yet he never claimed that he felt forced, threatened, intimidated or coerced into saying what he did. The question was defendant's state of mind—a subject most uniquely within his own knowledge. Yet he chose not to talk about it. A party which produces less satisfactory evidence when it was within the party's power to produce more satisfactory evidence usually does so because the better evidence does not exist.