STATE OF OREGON,
*Respondent,*
*v.*
TIMOTHY DENNIS FRINK,
*Appellant.*

(No. 40399, CA 12953)

600 P2d 456

James E. Mountain, Jr., Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Asistant Attorney General, Salem, argued the cause for respondent. On the brief were James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and Stuart R. Chandler, Certified Law Student, Salem.

Before Schwab, Chief Judge, and Tanzer, Richardson, and Roberts, Judges.

RICHARDSON, J.

## RICHARDSON, J.

Defendant appeals his conviction for Burglary in the Second Degree, ORS 164.215, and contends that his motion to suppress evidence seized in the course of a warrantless search should been have allowed.

On August 31, 1978, the Newport Pharmacy was burglarized and a large quantity of prescription drugs was stolen. Defendant was a prime suspect. That day the State Police received an anonymous report that an individual named Tim was "shooting up" a child, named Junior, with drugs at apartment 24 of a specified address. Both the local police department and the district attorney were notified. Concerned with the safety of the youngster, the district attorney approached the address and encountered a young boy who was acting abnormally, and who directed him to apartment 24.

The door to the apartment was standing wide open. The district attorney, without entering, peered inside and observed several large pharmacutical bottles of pills and various drugs lying about the residence. The district attorney recognized some of the items as controlled substances. There were also several wholesale cartons lying on the apartment floor. There was a partition wall blocking the view to the entire apartment. The district attorney radioed the police for assistance. Two officers immediately responded. When they arrived they both encountered the youth whom they knew as Junior. Under the direction of the district attorney the police officers entered the apartment to ascertain who if anyone was there. They found no one. While in the apartment the officers inspected some of the pill bottles more closely and found they carried labels from the Newport Pharmacy. Other controlled substances were also identified. The officers were already aware of the Newport Pharmacy burglary and the items taken.

The youngster approached the district attorney and asked if he wanted to find Tim. The boy then pointed

to a nearby apartment. As the officers approached that residence several persons began leaving. When asked, defendant admitted to being Tim, and was placed under arrest.

Defendant challenges the warrantless search of his apartment as being unconstitutional, the subsequent seizure of the pills as not being inadvertent, and his arrest as tainted by the illegal search. We affirm.

Defendant does not contend that the initial viewing of the pill bottles and paraphernalia through the open door was illegal, rather, he argues that the subsequent warrantless entry of the apartment and seizure of the items was unreasonable. The state argues that because the items were observed from the hallway, consistent with the plain view exception to warrantless seizure of evidence, the officers were entitled to enter and seize them. That argument goes too far.

It is well established that under certain circumstances the police may make a warrantless seizure of evidence which is in plain view. *Coolidge v. New Hampshire*, 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971); *Harris v. United States*, 390 US 234, 88 S Ct 992, 19 L Ed 2d 1067 (1968); *State v. Keller*, 265 Or 622, 510 P2d 568 (1973). This doctrine, however, has not been extended to authorize a warrantless entry of a residence in order to seize the items spotted.

The nonintrusive viewing of the pharmaceutical paraphernalia through the open door established only probable cause to believe the apartment contained contraband but did not legitimize any subsequent entry to effect a seizure. The entry must be made under authority of a warrant or exigent circumstances. Justice Stewart implied such a result in the plurality opinion in *Coolidge v. New Hampshire, supra:*

> "An example of the applicability of the 'plain view' doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across

some other article of incriminating character. \* \* \* Where the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate. Thus the police may inadvertently come across evidence while in 'hot pursuit' of a fleeing suspect. \* \* \* And an object that comes into view during a search incident to arrest that is appropriately limited in scope under existing law may be seized without a warrant. \* \* \* Finally, the 'plain view' doctrine has been applied where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object. \* \* \*

"What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. \* \* \*" 403 US at 465-66.

"\* \* \* \* \*

"\* \* \*[P]lain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle \* \* \* that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure. \* \* \*" 403 US at 468.

■ Although "objects falling in the plain view of an officer who has a right to be in the position to see them are subject to seizure," *Harris v. United States, supra,* this is not the case where the officer must make an

intrusion into a constitutionally protected area in order to make the seizure. *Taylor v. United States*, 286 US 1, 52 S Ct 466, 76 L Ed 951 (1932); *see State v. Drouhard*, 31 Or App 1083, 572 P2d 331 (1977), *rev den* (1978); *cf., State v. Olson*, 287 Or 157, 598 P2d 670 (1979). As Judge Moylan observed:

> "Seeing something in open view does not, of course, dispose, ipso facto, of the problem of crossing constitutionally protected thresholds. Those who thoughtlessly over-apply the plain view doctrine to every situation where there is a visual open view have not yet learned the simple lesson long since mastered by old hands at the burlesque houses, 'You can't touch everything you can see.'
>
> "Light waves cross thresholds with a constitutional impunity not permitted arms and legs. Wherever the eye may go, the body of the policeman may not necessarily follow. * * *"

Moylan, *The Plain View Doctrine: Unexpected Child of the Great "Search Incident" Geography Battle*, 26 Mercer L Rev 1047, 1096 (1975).

However, police officers may enter a residence without a warrant to render emergency aid if they reasonably believe there is an individual in distress and in need of help. *State v. Plant*, 28 Or App 771, 561 P2d 647 (1977). In this instance the precipitating reason for the district attorney's and the police officers' presence at apartment number 24 was their concern for the safety of the child who was being "shot up with drugs." In response to what they reasonably perceived to be an emergency situation the officers entered the apartment in order to render aid to any child who may have been behind the partition. Merely because the report had indicated that Junior was being "shot up," and the officers saw Junior in the hall in a stupified condition would not militate against the reasonableness of their entry. With the large quantity of drugs strewn over the area together with the report, the officers could reasonably have believed that there may be another child involved. The trial court found

this to be an exigent circumstance and we should not judge it purely on the basis of hindsight. *Cf., Ker v. California*, 374 US 23, 40, 83 S Ct 1623, 10 L Ed 2d 726 (1963). Once the officers were lawfully on the premises they could seize the evidence which came into their plain view. *State v. Johnson*, 232 Or 118, 374 P2d 481 (1962); *State v. Plant, supra.*

■ Defendant argues that even if the officers lawfully entered the apartment the discovery of the drugs was not inadvertent because they had already been seen by the officers through the open door. In this case the officers and the district attorney came to the apartment and entered it for the purposes of checking out a report that a young boy was being administered drugs. Their view of the apartment from the open door and their subsequent entry to check behind the partition was one continuous course of conduct during which the drugs were seen. The police did not come to defendant's apartment with the expectation of finding the evidence and seizing it. In this respect the police made an inadvertent discovery of the evidence in plain view during a lawful entry of the apartment not related to a search or seizure of evidence against the accused.

Defendant finally argues his arrest was unlawful because it was tainted by the illegal seizure of the evidence in his apartment. Because we conclude the seizure was lawful that contention must fail.

Affirmed.