Argued July 19, reversed and remanded
for new trial October 8, 1979

STATE OF OREGON,
*Respondent,*
*v.*
KARL JOSE SHEEHAN,
*Appellant.*
(No. C 78-09-15670, CA 12801)
600 P2d 971

Marianne Bottini, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

James M. Brown, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Gillette and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

Defendant appeals his conviction of burglary in the second degree, ORS 164.215, robbery in the third degree, ORS 164.395, and assault in the fourth degree, ORS 163.160. The sole issue we address is the admissibility of inculpatory statements made during an interview prior to a polygraph examination.[1] We reverse and remand.

Prior to trial defendant agreed to submit to a polygraph examination to be administered by Officer Lattin of the Oregon State Police. Defendant entered into a stipulation as to the results of the examination, which provides in part:

> "4. It is further stipulated that the results of the polygraph examination will be admissible in court in the trial of the above-entitled case. However, if the results of the polygraph are inconclusive, neither side will mention the polygraph examination during trial."

This stipulation was signed by defendant, his attorney, and the deputy district attorney. The stipulation was accompanied by a Certificate of Understanding, signed by defendant, which contains the following provision:

> "4. I understand that by taking a polygraph examination I waive my rights of presence of counsel and the right to remain silent. I understand that any statements made by me during the said polygraph examination may be used against me in a court of law."

Prior to the interview, Officer Lattin advised defendant: that he had the right to remain silent; that he had the right to refuse to take the polygraph examination; that anything he said could be used against him in a court of law; that he had the right to a lawyer and

---

[1] Defendant also argues that the conviction for assault, which the trial court merged with the robbery conviction, should be stricken from the judgment order. Due to our disposition of this appeal, we do not reach this issue.

[609]

to have that lawyer present with him during questioning; that if he could not afford to hire a lawyer, one would be appointed to represent him at no expense before questioning if he so desired; that if he decided to give a statement, he could stop talking at any time he wished; and that if he decided to take the polygraph examination, he could terminate the examination any time he wished.

During the interview preceding the use of the machine, defendant made inculpatory statements. Defendant proceeded to complete the polygraph examination, the results of which were determined to be inconclusive.

At the pretrial hearing on the admissibility of the pretest statements in question, Officer Lattin testified that the pretest interview, which is used to help construct the polygraph examination, is an "integral part" of the examination. Elaborating, he stated:

"In terms of the polygraph examination in its totality, it's my opinion that a polygraph examination begins when an individual walks into the room and ends when the individual walks out of the room."

He noted that suspects often change their story from that previously given, and explained that the defendant was informed before the interview that he was being tested on what he believed to be true at the date of the test. He added that "a good, qualified, accurate or reliable examination needs a pre-test." The trial court also heard defendant testify that he took the polygraph examination voluntarily. The court ruled that the statements were admissible, but that no mention would be made at the trial of the fact that there was a polygraph examination or of the factual context in which the statements were made. At trial, Officer Lattin testified to defendant's statements in accordance with the trial court's order.

Defendant argues that under *State v. Thompson,* 30 Or App 379, 567 P2d 132 *rev den* (1977), the state-

[610]

ments in question 2 were inadmissible.[2] In *Thompson,* the defendant had agreed under a protective court order to take a polygraph examination, the results of which would be disclosed only to defense attorneys. Prior to the interview, the examiner told the defendant that anything he said could be used against him in a court of law. The defendant then made admissions tantamount to a confession of guilt. Defendant was never connected to the polygraph machine. Those statements were admitted at trial over defendant's objection. We stated:

" * * * [Defendant] was led to believe from both the above representations and the protective order of the circuit court that everything that was said and done during the examination would be a secret and would be disclosed only to his attorneys. To use admissions made by and obtained from a defendant under the above circumstances smacks of deception and falls short of the standards of fair play in criminal proceedings inherent in our system of justice. Accordingly, we hold that it was reversible error to allow the polygraph examiner to testify concerning statements obtained under the circumstances shown in this case." 30 Or App at 383.

The admissibility of the statements depends upon whether they were made pursuant to stipulation that they would be admissible in evidence. In contrast to the situation in *Thompson,* defendant here made the incriminating statements with the understanding that they would be admissible at trial only if the results of the test were conclusive, either as to defendant's truthfulness or lack of it. This distinction alone, however, is not decisive. We observe a fatal ambiguity in the stipulation entered into by defendant. The provision that in the event of inconclusive results, "neither side will mention the polygraph examination during trial"

---

[2] Defendant renews the contention made in *Thompson* that pretest statements constitute "results" of the test as that term was used in the stipulation, and must, therefore, be excluded. As in *Thompson,* we decline to equate those statements with the "results" of the polygraph examination.

[611]

is reasonably subject to at least two differing interpretations by a person of ordinary understanding: (1) there will be no mention at trial of the fact of the examination; and (2) there will be no mention of the fact of the examination or of anything that transpired as part of it.

In *Thompson,* as in the present case, defendant argued that the "polygraph examination" included the pretest interview. The same polygraph examiner, Officer Lattin, conducted the interview in each case. Lattin testified in *Thompson* as here that the pretest interview was an integral part of the polygraph examination as a whole, and that the pretest interview was fundamental because the examination would not be reliable without it. He further testified that, although defendant was never connected to the polygraph machine, it was his opinion that he conducted a portion of the polygraph examination. In *Thompson,* Lieutenant Riegel of the Oregon State Police, a qualified polygraph examiner, also testified. He stated his opinion that the pretest interveiw is part of the examination and that the examination begins the moment he begins talking to the person to be interviewed.

Thus, in *Thompson* as here we were presented with the issue of whether the "polygraph examination" included the pretest interview. Although the *Thompson* opinion did not expressly address the issue, implicit in that case's holding that the statements were inadmissible is the conclusion that those statements were a part of the polygraph examination.

From defendant's testimony at the pretrial hearing, it appears likely he was led to believe that in the event the test results were inconclusive no statements he made after he entered the examination room would be admissible at trial.[3]

---

[3] Defendant testified at the pretrial hearing as follows:

"Q  On the day that you took the polygraph, did you have some

conversation with the polygraph examiner before actually being hooked up on the test?

"A  Yes, I did.

"Q  And that conversation that you had with him: did you understand —

"MR. GARDNER:  Objection, your Honor.

"THE COURT: Well, finish the question first, and I will hear it.

"Q  (By Ms. Eyerman) The conversation that you had with the polygraph examiner: did you understand that that could or could not be admissible in court?

"MR. GARDNER:  Objection —— leading, suggesting the answer.

"THE COURT:  Oh, it's leading, but I don't think we will ever get an answer unless we do.

"Objection overruled. You may answer, if you understand.

"THE WITNESSES:  No. I understood that inconclusive meant jt couldn't be used in court.

"Q  (By Ms. Eyerman) What couldn't be used in court?

"A My statements used for the results of the polygraph test."

From the court's pretrial ruling that the statements would be admissible, it is apparent that, contrary to the dissent's contention, the court did not make a credibility finding adverse to defendant. The court stated:

" * * * But it's apparent to the Court that either the form of stipulation and certificate of understanding should be amended in future cases, or else if such statements are held to be admissible, it would, of course, limit to a great extent the willingness of defendants to enter into such agreements.

"The basic fairness of the thing appears to indicate that—appears to support the defendant's position. But, looking at it from the legal aspect, the only thing that the stipulation prohibits is mention of the polygraph examination. There is nothing in the stipulation, in and of itself, which would preclude the use of these pre-trial [sic—pretest?] statements.

"* * * * *

"But, the only way to get this thing to a head is for the Court to rule that the statements are admissible, as I think they are under this stipulation. And then, if the Court of Appeals finds that that's unduly unfair to a defendant, they, undoubtedly, will fire it back. But, looking at the four corners of the stipulation, the stipulation does not prohibit the use of these pre-test statements.

"I will rule that the statement may be admitted in evidence."

Although the court agreed with defendant's position that standards of fairness dictate exclusion of the statements due to difficulties in the wording of the stipulation and Certificate of Understanding, the court interpreted the stipulation to permit the statements to be admitted into evidence. As stated in the text, we disagree with that ruling.

[613]

■■ Where a defendant has agreed to waive his right to remain silent under specific conditions, he is entitled to have those conditions scrupulously adhered to. We conclude that the trial court erred in admitting evidence of the statements in question.

Reversed and remanded for new trial.

**GILLETTE, J.,** dissenting.

In *State v. Thompson,* 30 Or App 379, 567 P2d 132, *rev den* (1977), we held that certain statements made by a criminal defendant to a polygraph examiner during a pretest interview were inadmissible. In doing so, however, we were at pains to limit our holding to "* * * statements obtained under the circumstances shown in this case." *Id.,* at 383. Today the majority applies *Thompson* to a case far different. I wouldn't.

In criminal trials, the difficulty with polygraph evidence stems from two sources.

First: When an accused makes statements or responds to questions while connected to the machine the operator makes a conclusion that his answers are deceptive, not deceptive (*i.e.,* truthful) or that neither conclusion can be made. Courts have generally been reluctant to admit the results of the examination because of reliability and policy considerations. Consequently, the test results have been admissible only if both sides so stipulate.

The second source of difficulty is in the instance where the results of a polygraph are not admitted but the polygraph is mentioned at trial. The jury, from the mention of the polygraph, may infer the defendant is guilty because he refused to submit to the test and prove his innocence.

These are the only two problems that relate to a polygraph examination, and neither problem arose in this case. The results of the examination were not put in evidence and polygraph was not mentioned in the trial.

In my view, the key to *State v. Thompson, supra.* was the fact that the entire polygraph examination was conducted under a protective order which would have limited disclosure of the results of the test itself to defense counsel. The examiner was, in effect, made a part of the defense team. To permit him to testify under such circumstances, we said, "smacks of deception." *Ibid.* So it did. Here, by contrast, defendant knew the examination results could potentially be used in court. The examiner was not part of his team.

The majority acknowledges this distinction but nonetheless rules defendant's statements inadmissible, due to a "fatal ambiguity" in the stipulation concerning the polygraph examination entered into by defendant. The stipulation provided that "neither side will mention the polygraph examination during trial." This stipulation, the majority says, *could* have been misunderstood by defendant to mean not only that there would be no mention of the *fact* of the examination but also that there would be no mention of anything said *during* the examination.

The difficulty with the majority's analysis to this point is that what was said by defendant in this case was said *prior to the actual administration of the test,* but the majority solves this problem by in effect redefining "polygraph examination" in the stipulation to mean "anything that occurs from the moment defendant enters the room to take the examination until the moment defendant leaves that room." This redefinition is accomplished by quoting the polygraph examiner to that effect.

We should not use police officer testimony to create legally-binding definitions of procedures where the officer's testimony was not directed toward that end. As I read it, the officer's statement is directed to another consideration—like any professional, he recognizes that the circumstances surrounding the giving of a test can affect the validity of the test result. He therefore sees his entire course of contact with the

[615]

defendant as pertinent to achieving his goal, *viz.,* a valid test result. To turn his statement into a legal definition which results in the suppression of statements made by defendant *before* the test was administered and after full advice of rights is an unfortunate misapplication of his testimony.

The only other string to the majority's bow is defendant's own testimony — which the majority calls "unclear"—concerning his understanding as to whether statements he made prior to the actual administration of the test would be admissible.

I do not find defendant's statements unclear. To me, he is saying only that he believed that statements made by him he was actually answering questions while connected to the polygraph machine would not be admissible. But, assuming the majority to be correct in their reading of his testimony, I would still hold that the statements are admissible because the trial court—assuming it understood defendant to say what the majority says he said—found against the defendant on the issue of voluntariness. This necessary means the trial judge made a credibility finding *against defendant.* Such a finding should bind us. *State v. Warner,* 30 Or App 117, 566 P2d 546 (1977); *State v. Ward,* 37 Or App 591, 600, n 1, 588 P2d 72 (1978) (dissenting opinion), adopted on rehearing 38 Or App 425, 590 P2d 296, *rev allowed,* 287 Or 123 (1979).[1]

I dissent.

---

[1] The majority reads the trial judge's comments otherwise. (42 Or App 607, 612-613, n. 3). Even ignoring (as we may not) the salutory rule that it is what a judge puts in his written order, not something he may have said from the bench, that counts, *see, e.g., State v. Swain/Goldmsith,* 267 Or 527, 517 P2d 684 (1974), I could not reach the conclusion the majority reaches here. The majority appears to assume that this veteran trial judge held that this defendant's statements were admissible even though not voluntarily made. I decline to assume that, after an opportunity for reflection prior to entering his written order, the trial judge would act upon that basis.