Argued and submitted July 10, 1981; resubmitted In Banc
February 4, reversed and remanded for reconsideration March 8,
reconsideration denied June 10,
petition for review denied July 27, 1982 (293 Or 394)

# STATE OF OREGON,
*Appellant,*

*v.*

# KENNETH EDWARD TREMAINE,
*Respondent.*

## (No. 80-4363-C-2, CA A20370)

641 P2d 637

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Marilyn C. McManus, Deputy Public Defender, Salem, argued the cause for respondent. With her on the brief was Gary Babcock, Public Defender, Salem.

GILLETTE, J.

Buttler, J., dissenting.

## GILLETTE, J.

Pursuant to ORS 138.060(3), the state appeals from a pre-trial order suppressing evidence found during a warrantless search of defendant's motor vehicle. We reverse.

Shortly after midnight on December 4, 1980, police officers Jones and Johnston, driving separate patrol cars, responded to an emergency call at the Minute Market in Phoenix, Oregon. Discovering no emergency there or at the Budget Truck Stop, the only other local all-night business, the officers suspected that the emergency call was actually a "set-up" for a burglary elsewhere. They began checking the area for suspicious activity.

As Jones drove past a business known as Southern Oregon Color Processing, he noticed a dark van parked near the front door. The firm usually had a porch light burning at night, but that night it did not. Because the police were usually notified when someone was legitimately in the building at that time of night, Jones radioed Johnston to check the front of the building while he checked the rear. As Johnston approached, his headlights illuminated the van, and he could see defendant sitting behind the wheel. Defendant looked at Johnston, back at the door of the building and then again at Johnston. Johnston could see another man, dressed in dark clothing, outside the van and moving toward the front door of the building. Jones then pulled up behind the van. Defendant drove off "in a very hurried manner," with Jones in pursuit. Johnston looked again for the other man but could not see him.

Defendant's van ran a stop sign, traveled about two blocks, turned into a motel parking lot and narrowly missed a telephone pole before coming to a sudden stop. Defendant jumped out of the van and took off running. He finally stopped after Jones' third order to halt. He was handcuffed, put under arrest for attempting to elude a police officer and then asked why he ran. Defendant answered that he had been drinking in the van, the doors of which, the officers then discovered, were closed and locked. Defendant claimed not to know where the keys were. After

he was searched and the keys were not found, he was placed in a patrol car.

The officers could see through the windows that the van was full of clothes but, according to one of them, "didn't think a whole lot about it at the time," because it was a "live-in type" van. They checked the immediate area "real quickly" to try to find the other man who had been seen near the building. Unsuccessful in that, they returned to the van and proceeded to open it with a coat hanger.

Officer Johnston testified that he saw a wine bottle and three beer bottles through the window of the van *before* the attempt to enter the van with the coat hanger. However, he did not say whether the bottles were open, empty or filled. Jones testified he went into the van in order "to check for an open container because that is the reason [defendant] said that he ran." Jones said that, once inside the van, he saw

"* * * a wine bottle laying tipped over with the cap off in the front seat by the gas pedal, [and] three beer bottles had rolled out from between the seats."

In looking to see if there was anything else between the seats, he noticed a prybar and a crowbar sticking out of an open, large, green, cloth duffel bag. He pulled out the bag and found it also contained a drill, saws, a bolt cutter and a large screwdriver. He then advised defendant he was under arrest for possession of burglar's tools and read him his *Miranda*[1] rights.

Jones testified that he decided to impound the vehicle, called for a tow truck and, in beginning an "inventory," discovered that the clothes, piled two to three feet deep, had price tags from the Craft Guild, an Ashland store, still attached. He then radioed the Ashland police, who confirmed that there had been a burglary at the Craft Guild and dispatched an officer to the motel parking lot. Jones said:

"* * * [W]e just closed the door to the van and waited till he got there. We were just going to let him decide if he wanted to impound the vehicle at Ashland to obtain a search warrant to try to check it out for anything else."

---

[1] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

Defendant was subsequently charged with burglary in the first degree.

In granting defendant's motion to suppress the evidence found in the van, the trial court stated:

"* * * The fact of the matter is, as I see it, and looking at the opinions handed down by the various Appellate Courts, the big problem is what authority the officers then had to go into this vehicle. [Defendant] is now in custody. It can be assumed that he's going to be detained. The vehicle can be placed in custodial protection by the officers if there's reason to feel that it should be searched. *The big problem is what was their authority to then make a search of the vehicle without a warrant authorizing them to do so.*

"The Court of the State has said that even had they made a warrantless search of a vehicle and found a fishing tackle box in there unlocked, they had no right to open it and search for contents without a warrant to do so, search warrant. If that is the law, and I understand that is the law, then if I correctly interpret what our Courts are saying, there's all the more reason, when this was completely locked, the whole vehicle, why an officer should not make a search without getting a warrant. There's nothing to indicate that a warrant could not be obtained. There's nothing to indicate that the officers could not have kept this vehicle in protective custody pending obtaining such a warrant." (Emphasis supplied.)

■ ■ The state and defendant both assume, incorrectly, that the trial court's order was based upon its conclusion that the evidence seized was the "fruit" of defendant's custodial confession taken without a waiver of his *Miranda* rights.[2] *See Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963); *State v. Garrison,* 21 Or App 155, 534 P2d 210, *rev den* (1975). The state contends that the trial court ignored Johnston's testimony that he saw the wine and beer bottles in plain view from a lawful vantage

---

[2] Defendant's pre-trial motion to suppress, however, was based on the grounds that the evidence was obtained

"* * * as a result of an unreasonable stop and was also obtained as the result of a warrantless search of the vehicle in defendant's possession in violation of defendant's constitutional rights."

As the emphasized portion of his remarks show, the trial judge did not resolve the motion on the basis of *Miranda,* even though defendant raised the issue by an objection at the suppression hearing.

point outside the van.[3] According to the state, this testimony, if believed by the trial court, would satisfy one exception to the "fruit of the poisonous tree" doctrine and justify the warrantless search of defendant's van. We do not agree that any "exception" to the "fruit of the poisonous tree" doctrine is applicable here.

Our ultimate problem with this case is this: the trial judge did not specifically rule upon whether or not he believed Johnston's testimony. To the trial judge, suppression was justified because the van was itself a "closed container" which could only be searched with a warrant. As explained below, we reject that analysis. As we view the case, Johnston's testimony is pivotal—if it is believed, the trial judge's order was incorrect; otherwise, it was correct.

Our concern may be illustrated this way: when Johnston arrived at the motel, defendant had already fled, been apprehended and been brought back. He was charged, appropriately, with attempting to elude a police officer. One who attempts to elude normally does so for a reason. Jones sought the reason impermissibly, by interrogating defendant without advising him of his rights. Johnston sought the reason *legally,* by looking into the locked van from outside. The court's concern that this was a "closed container" was misplaced—this was a locked automobile, subject to search pursuant to well-established principles having nothing directly to do with the "closed container" rule.

■  What Johnston says he saw in the van, *i.e.,* the bottles, would be admissible evidence of either the crime of attempting to elude (as evidence of motive) or possession of an open container (as evidence of that crime itself). Johnston, if believed, therefore had probable cause to search the van to seize the evidence he saw.[4] We also think he had

---

[3] The "plain view" doctrine is that contraband that comes into plain view of a police officer who is lawfully in a position to see it may be seized without a warrant and used as evidence in a criminal prosecution. *Harris v. United States,* 390 US 234, 236, 88 S Ct 992, 19 L Ed 2d 1067 (1968); *State v. Keller,* 265 Or 622, 625, 510 P2d 568 (1973). A "plain view" by itself does not, however, resolve the question of an officer's authority to make a forced entry into a protected place. *State v. Frink,* 42 Or App 171, 174, 600 P2d 456 (1979).

[4] Defendant seems to concede as much: "Defendant concedes that, based on the observations made by the officers of the auto's interior, there was probable

probable cause to do so without a warrant, although the justification for that view is not as easy to reach as the state's brief suggests.

■ Assuming *arguendo* that Officer Johnston saw open containers[5] through the window of the van, the search cannot be justified by the "plain view" rule standing alone. While objects falling in the plain view of an officer who has a right to be in a position to see them are subject to seizure, *Harris v. United States,* 390 US 234, 88 S Ct 992, 19 L Ed 2d 1067 (1968), that is not true when an intrusion into a constitutionally protected area must be made in order to *make* the seizure. *State v. Frink,* 42 Or App 171, 600 P2d 456 (1979); *State v. Drouhard,* 31 Or App 1083, 572 P2d 331 (1977), *rev den* (1978). Although there is a lesser expectation of privacy in an automobile than in a home, *South Dakota v. Opperman,* 428 US 364, 96 S Ct 3092, 49 L Ed 2d 1000 (1976), an automobile is nonetheless afforded Fourth Amendment protection from unreasonable searches and seizures. *See, e.g., Chambers v. Maroney,* 399 US 42, 51, 90 S Ct 1975, 26 L Ed 2d 419 (1970); *State v. Fondren,* 285 Or 361, 591 P2d 1374 (1979). Moreover,

> "* * * [P]lain view *alone* is never enough. * * * [N]o amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' " (Emphasis supplied.) *Coolidge v. New Hampshire,* 403 US 443, 468, 91 S Ct 2022, 29 L Ed 2d 564 (1971).

The "plain view" doctrine, in other words, may give the officers probable cause to search the car, but it does not give them probable cause to do so *without a warrant.* The additional factor justifying immediate entry without a warrant is the existence of "exigent circumstances."

■ The state argues that the exigency was created by the fact that neither the police nor defendant had a key to

---

cause to believe that the vehicle contained evidence of criminal activity." This concession may have been inadvertent or inappropriate, however — defendant's own recitation of facts in his brief erroneously credits the officers with seeing more from the outside of the van than the officers' own testimony indicates they saw. We leave the matter to the trial court.

[5] *See* ORS 487.843, the "open container" law. Johnston's testimony, standing alone, may, but does not necessarily establish that the bottles were open. It may be that even Johnston's view of the bottles, *together with defendant's flight,* would justify entry into the car. The point is, our rejection of the trial court's "a-car-is-a-closed container" rationale refocuses the inquiry for all parties.

the van and that a second suspect, still at large, could have returned and driven the van away. It relies on *State v. Greene,* 285 Or 337, 591 P2d 1362 (1979). In *Greene,* a neighbor of robbery and assault victims was able to describe the thieves and their car, including its license number, to police. The car was found at the home of a woman who was not involved in the crime but who was at home at the time the police seized the car and towed it to the station to be searched. The court upheld the search, stating:

> "The officers in this case had reason to believe that someone might come out of the house at any time and attempt either to drive the car away or remove something. The officers then would have the choice of either letting the evidence disappear or seizing the car despite the lack of a warrant. *Chambers v. Maroney,* 399 US 42, 90 S Ct 1975, 26 L Ed 2d 419 (1970) approved the latter procedure and equated it as no greater intrusion than a warrantless search." 285 Or at 344.

The court found a "distinct possibility" that someone — namely, the owner or the yet unapprehended thieves — might try to remove the car or evidence before a warrant could be obtained. We find the same "distinct possibility" here — the driver himself was in custody, but he had no keys; and another unidentified man had been seen in the area of the color processing store, which was only two blocks from the place where the van was stopped. There was a "distinct possibility" that the unknown party had keys and would attempt to take away the van. The officers had exigent circumstances justifying their entry without a warrant.

As we have indicated, the trial judge ordered suppression without indicating whether he accepted Johnston's testimony, apparently because, under his theory, Johnston's testimony was irrelevant. Precisely the opposite is true. Johnston's testimony, if accepted, together with the surrounding circumstances, supplies both probable cause and exigent circumstances. This case must be remanded for reconsideration[6] in light of the principles set out in this

---

[6] If the trial court accepts Johnston's testimony, it will then be required to consider issues concerning the search of the duffel bag and the examination of the clothing. The trial court did not address these issues at the first hearing because its ruling made their consideration unnecessary. Again, the court's ruling may

opinion. *State v. Johnson/Imel,* 16 Or App 560, 519 P2d 1053, *rev den* (1974).

Reversed and remanded for reconsideration.

**BUTTLER, J.,** dissenting.

The court today holds that a police officer who looks through a car window and observes a wine bottle and three beer bottles lying on the floor of a motor vehicle, without observing that any of the bottles contained anything, or that any of them was open, may, without a warrant, break into the locked vehicle to conduct a search. So far as I know, there is nothing unlawful in having in an automobile empty liquor bottles or, for that matter, full ones that have not been opened or had the seal broken. *See* ORS 487.843.[1] Because I believe the warrantless search, on those limited facts, was unreasonable, I would affirm the suppression order. Accordingly, I dissent.

The only way one may make an arguable case that the officer had sufficient information to support a finding of probable cause is to couple his plain view of the bottles with the information, previously obtained from defendant impermissibly, that he was running from the police because he had been drinking in the van. Although the majority recognize, as did the trial court, that defendant's

---

depend on its acceptance of Johnston's (and Jones') testimony. We express no opinion as to these last two questions, other than to note that the duffel bag may have been open, *see State v. Nichol,* 55 Or App 162, 637 P2d 625 (1981), or the examination of the clothing may have been proper, *see State v. Crosby,* 35 Or App 617, 582 P2d 40 (1978), *rev den* (1979), and that the answer to either question does not necessarily depend upon the other.

[1] ORS 487.843(1) provides:

"It is unlawful for the registered owner of any motor vehicle, or the driver if the registered owner is not then present in the vehicle, to keep in a motor vehicle when the vehicle is upon any highway, any bottle, can, or other receptacle containing any alcoholic liquor, which has been opened, or a seal broken, or the contents of which have been partially removed, unless the bottle, can, or other receptacle is kept in the trunk of the vehicle, or kept in some other area of the vehicle not normally occupied by the driver or passengers if the vehicle is not equipped with a trunk. For the purposes of this section, a utility compartment or glove compartment is considered within the area occupied by the driver and passengers. This section shall not apply to the living quarters of a camper or a motor home."

"custodial confession taken without a waiver of his *Miranda*[2] rights" (56 Or App at 275) was not admissible, they say that if the trial court believed Officer Johnston's testimony that he saw the "bottles in plain view from a lawful vantage point outside the van" (56 Or App at 275-6), that testimony would satisfy the requirement of "probable cause to search the van to seize the evidence he saw." (56 Or App at 276.) Having said that, however, the majority drop a footnote which says that, "Johnston's testimony, standing alone, may not establish that the bottles were open."

The majority, the trial court and I are in agreement that the statement impermissibly obtained from defendant may not be used to determine the existence of probable cause. *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963). That leaves only Johnston's testimony. The mere fact that he saw the bottles did not rise to the level of probable cause to believe that defendant had violated the so-called "open container" law (*see* n 1, *supra*). That law only makes it unlawful to have present in a vehicle "* * * any bottle * * * containing any alcoholic liquor, which has been opened, or a seal broken, or the contents of which have been partially removed, * * *." The record is devoid of any evidence that any of the bottles appeared to fall within any of the statutory proscriptions.

Because the officers did not have probable cause[3] to believe that defendant had violated the "open container" law, the only justification the state advances for the search, the officers had no valid basis to search the van without a warrant.

The trial court order suppressing the evidence should be affirmed.

---

[2] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

[3] The majority comment (56 Or App at 276, n 4) that defendant "seems to concede" that the officers had probable cause to search the van, but, appropriately, do not rely on the concession. It appears that defendant misread the record, believing it showed that the officers saw burglar's tools through the van window. His principal reliance is on the "poisonous fruit" contention.