Argued and submitted December 23, 1981, affirmed in part;
reversed in part May 12, 1982

COLLIER,
*Respondent,*
*v.*
CITY OF PORTLAND,
*Appellant.*

(No. A7908-04117, CA A20190)

644 P2d 1139

Rhona Wolfe Friedman, Deputy City Attorney, Portland, argued the cause and filed the briefs for appellant.

Alice Goldstein, Portland, argued the cause for respondent. With her on the brief was Welch, Bruun & Green, Portland.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

## WARDEN, J.

This action was commenced by plaintiff against defendant City of Portland for trespass to property, assault and battery, false imprisonment and malicious prosecution. The jury found for plaintiff on the actions for trespass and false imprisonment and awarded her $2,500 in damages on each claim. Defendant appeals.

On December 6, 1977, at approximately 4:10 a.m., Officer Mitcham of the Portland Police Department was dispatched to investigate a citizen's complaint of noisy neighbors. After talking briefly with the complainant and learning that the house next door was the source of the complaint, Mitcham walked over to plaintiff's residence, where he was joined by Officer Carneau. The porch light was on; a television set, a radio, tools and miscellaneous other items were on the porch. Mitcham observed that the glass portion of the door was broken and there was broken glass on the porch. The door was open, and the officers could see into the living quarters. There were panels stacked up on the floor, no pictures or drawings on the walls, no decorations at all and little furniture, if any. Mitcham saw plaintiff, wearing a trench coat and shoes, moving inside the house. Believing a burglary was in the process of being committed, the police officers entered the house.

Plaintiff was confronted by Officer Mitcham in the living room. When asked if she lived in the residence, plaintiff replied "yes" and asked the officers what they were doing there. Believing plaintiff to be a burglar, the officers grabbed her arms and patted her down for weapons, at which time she began screaming and struggling. She was immediately arrested for assault in the fourth degree and handcuffed. During the scuffle, Mitcham slapped plaintiff's face. She was subsequently carried bodily out to a police car and transported to the police station for booking.

Although arrested for assault and battery, plaintiff was formally charged with harassment. She was not charged with burglary. She was acquitted of the harassment charge after a jury trial. She then filed this civil action against the city for trespass to property, assault and battery, false imprisonment and malicious prosecution.

At trial, plaintiff testified that she and her roommate were in the process of remodeling the house, that in the early morning hours of August 6, 1977, her roommate had left the house for a few minutes to take some friends home and that plaintiff had placed the television set, radio and tools on the porch for her roommate to pick up when she returned. Plaintiff also testified that she had locked herself out of the house the day before and had broken the glass in the door to let herself in. She testified that the noise the neighbor had heard was probably made by the falling of some doors that had been leaning against a wall.

At the close of its case, defendant moved for directed verdicts on all four causes of action. The motions were denied. The jury returned verdicts in favor of plaintiff on the trespass to property and false imprisonment claims, and a judgment order was entered accordingly. Defendant's motion for judgment notwithstanding the verdicts was denied.

On appeal, defendant assigns three errors. The first is the trial court's denial of its motion for a directed verdict as to plaintiff's cause of action for trespass to property. Defendant contends further that the court compounded the error by giving an instruction to the jury which effectively directed a verdict for plaintiff on that issue.[1]

■ ■ Trespass to real property is an intentional entry upon the land of another by one not privileged to enter. *Amphitheaters, Inc. v. Portland Meadows,* 184 Or 336, 343, 198 P2d 847 (1948); Restatement (Second) of Torts § 158 (1965). Merely entering a building constitutes a trespass, and, unless the law provides an exception applicable to the facts of this case, there was a trespass when the police entered plaintiff's residence. As an affirmative defense, defendant alleged that the officers were privileged to enter the dwelling, because they believed a crime was being committed or had been committed. That defense arises from purely legal precepts in the criminal law system. The question is: Did the officers have *legal* authority to enter the premises?

---

[1] Our disposition of defendant's first assignment of error makes consideration of the instruction unnecessary.

■     In making that determination, we must first consider whether the law specially authorizes police officers to enter private premises, without a warrant, solely for the purpose of criminal investigation. We have found no Oregon case answering this precise question,[2] although we have held that in a clear emergency situation officers may break and enter without a warrant. *See State v. Frink*, 42 Or App 171, 600 P2d 456 (1979) (to save a child from neglect); *State v. Corbin*, 15 Or App 536, 516 P2d 1314 (1973), *rev den* (1974) (to prevent a suicide).

■     Defendant relies on the Portland City Charter, which gives police officers authority to exercise "all powers commonly known as the police power" and to "secure the protection of persons and property * * *." § 2-105(a)(2). That language does *not* give officers blanket authority to enter dwellings just for the purpose of criminal investigation.

■     To justify an entrance into a dwelling to arrest a person or to seize evidence without a warrant, there must be probable cause and exigent circumstances. *State v. Peller*, 287 Or 255, 598 P2d 684 (1979); *State v. Olson*, 287 Or 157, 598 P2d 670 (1979). The policy reason behind such requirements is the protection of a citizen's Fourth Amendment right to be free from unreasonable searches and seizures. This right extends to the citizen whose home is the target of a police investigation and to the citizen whose home becomes a refuge for a person sought for arrest, as well as to citizens in general. There must exist both probable cause to believe a crime has been committed and exigent circumstances before police officers may enter a residence for the purpose of investigation. *See State v. Carter/Burton*, 54 Or App 852, 857, 636 P2d 460 (1981), in which we held that officers could not go onto private property for investigatory purposes without a search warrant.

To determine whether defendant was entitled to a directed verdict, we view the evidence in the light most

---

[2] In *State v. Dalebout*, 4 Or App 601, 480 P2d 451 (1971), the defendant was charged with pointing a firearm at officers who came upon his property. We said: "The officers were not trespassers: ORS 164.460." That statutory section provided penalties for failure or refusal to depart premises upon notice of the owner. It excepted officers "on lawful business." It was repealed as a part of the 1971 revision of the criminal code.

favorable to plaintiff. *Bixler v. First National Bank,* 49 Or App 195, 619 P2d 895 (1980).

■    The evidence, supported by plaintiff's own testimony, is that at approximately 4 a.m., after being informed that a neighbor had complained of being awakened by noise in plaintiff's house, the officers went to the scene, spoke briefly with the complaining neighbor, and then went to plaintiff's house, where they observed that the door was open, there were valuable items of personal property on the porch, there was broken glass in the door and on the porch and the interior of the house appeared stripped. Those facts established probable cause to believe that there had been a burglary. Seeing the plaintiff moving about in the house (indicating that the crime was still in progress and the thief was within the premises) constituted sufficient exigent circumstances to excuse the requirement of a warrant. *See State v. Schrag.* 21 Or App 655, 536 P2d 461 (1975). Having probable cause to believe that a burglary was being committed and that the perpetrator was still on the premises, the police were privileged to enter plaintiff's residence.[3] That being so, defendant was entitled to a directed verdict on the cause of action for trespass to property.[4]

■    Defendant's third assignment of error is that the trial court erred in denying its motion for a new trial on the false imprisonment cause of action on the ground that the jury verdict was tainted by the court's erroneous instruction directing a verdict as to the trespass cause of action. Denial of defendant's motion for a new trial is not assignable as error where, as here, the alleged error was known to defendant during the trial. *Phipps v. Air King Manufacturing,* 263 Or 141, 144, 501 P2d 790 (1972); *Bowlds v. Taggesell Pontiac,* 245 Or 86, 96, 419 P2d 414 (1966).

The judgment of the trial court insofar as as it awarded damages for the cause of action for trespass to

---

[3] In finding that the officers were privileged to enter plaintiff's residence, we do not hold that they were also privileged to arrest or assault plaintiff. These issues are not before us on appeal.

[4] Because of the disposition of this issue, we need not consider defendant's second assignment of error, which goes to the court's instruction on damages for trespass.

property is reversed, and the judgment awarding damages for the cause of action for false imprisonment is affirmed.

Affirmed in part; reversed in part and remanded to the trial court to enter a judgment awarding plaintiff damages in the amount of $2,500 for the cause of action based upon false imprisonment only.