Argued and submitted June 3, reversed and remanded for trial November 20, 1986

## STATE OF OREGON,
*Respondent on Review/Petitioner on Review,*

*v.*

## JOETTA RENEE OWENS,
*Petitioner on Review/Respondent on Review.*

(TC 85-05-0972; CA A36677; SC S32804, SC S32811)

729 P2d 524

Gillette, J., concurred and filed opinion.

Lent, J., dissented and filed opinion in which Linde, J., joined.

Thomas J. Reuter, Lebanon, argued the cause for petitioner on review/respondent on review. With him on the

petition for review was Morley, Thomas, Kingsley & Reuter, Lebanon.

Stephen Peifer, Assistant Attorney General, Salem, argued the cause for respondent on review/petitioner on review. On the petition for review was Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Christine Chute, Assistant Attorney General, Salem.

CARSON, J.

Gillette, J., concurred and filed an opinion.

Lent, J., dissented and filed an opinion which Linde, J., joined.

## CARSON, J.

Two issues under the Oregon Constitution are presented in this case: (1) whether the warrantless search of defendant's purse, which included opening a clutch-style purse and two compact mirror cases found within the clutch-style purse and removing a transparent vial and clear plastic packet containing white powder, was justified as a search incident to arrest; and (2) whether a search warrant was required to analyze chemically the contents of lawfully seized transparent containers, when the police had probable cause to believe that they contained controlled substances.

### FACTS

On May 1, 1985, a PayLess Drug Store security officer observed defendant take several small items (perfumes and earrings) from store shelves, walk to the rear of the store, and place them in her purse. The security officer followed her when she left the store without paying for the items and stopped her outside. She first denied shoplifting but then admitted it and returned to the store with the security officer. The security officer asked her to empty her purse. She refused to do so, but she did remove the perfume and earrings that the security officer had observed her take.

A police officer arrived and asked defendant's permission to search her purse to determine whether she had any other stolen items. She refused, stating that everything she had taken was already on the table. The officer stated that he needed to see the contents of her purse to verify her statement. At the officer's insistence, defendant began to remove items from her purse.[1] She pulled out a small clutch purse, opened and closed it quickly, permitting the officer a "brief glimpse" at its contents. The officer told defendant that he needed to take a closer look at the contents of her clutch purse, because he believed he saw some items "that she possibly shouldn't be having." He testified that he had seen a compact mirror case and a small, transparent amber vial containing white powder. Based upon his experience, he testified that he believed he had seen "narcotics paraphernalia" in her clutch purse.

---

[1] Defendant's conduct should not be deemed to have given the officer her consent to search her purse or clutch purse.

After the officer continued to insist upon seeing the contents of her clutch purse, defendant eventually handed it to him. He opened it and removed the small vial, as well as two compact mirror cases. He opened both cases. One had a residue on the glass. The other contained a small clear plastic packet of white powder. When the officer asked defendant about the white powder, she said it was not hers, that a friend had given it to her, and that she thought it was cocaine. The officer seized the clutch purse and its contents and sent them to the State Crime Laboratory for chemical analysis. No search warrant was obtained. Several weeks later, defendant was charged with the crime of Possession of a Controlled Substance.

Defendant filed a pre-trial motion to suppress the white powder found in her clutch purse. The trial court granted the motion because "the search of said purse was not reasonably related to defendant's arrest for Theft in the Second Degree (Shoplifting)."

The state appealed pursuant to ORS 138.060. The Court of Appeals held that the search of defendant's purse, including the small clutch purse found inside the purse, was reasonably related to defendant's arrest for Theft and was reasonable in time, scope and intensity, citing *State v. Caraher*, 293 Or 741, 653 P2d 942 (1982). The subsequent warrantless testing of the contents of the vial and the clear plastic packet, however, was held unlawful, absent defendant's consent or exigent circumstances, under *State v. Lowry*, 295 Or 337, 667 P2d 996 (1983), and that court's opinion in *State v. Westlund*, 75 Or App 43, 705 P2d 208, *aff'd in part; rev'd in part*, 302 Or 225, 729 P2d 541 (1986). *State v. Owens*, 78 Or App 279, 715 P2d 1351 (1986).

Both defendant and the state petitioned for review. Defendant argues that the search of her purse was not reasonably related to her arrest for Theft and that it was not reasonable in time, scope and intensity. The state contends that the discovery, seizure and testing of the contraband found in defendant's purse were lawful aspects of a search incident to arrest. The state further argues that no search warrant is required to test "recognized contraband." We reverse.

## DISCUSSION

### A.  Search Incident to Arrest.

Following defendant's arrest for Theft, the police officer took a series of actions: he searched defendant's purse; he seized her clutch purse and its contents; he opened two compact mirror cases found in the clutch purse; and he sent a transparent vial and a clear packet found inside the clutch purse, both of which contained white powder, to the State Crime Laboratory where they were opened and their contents analyzed to confirm the officer's reasonable belief that they contained controlled substances. Defendant challenges each of these events as a separate, warrantless intrusion of constitutional magnitude.

Under the Oregon Constitution,[2] a warrantless search of the arrestee's person incident to arrest was traditionally justified to protect the officer and to preserve crime evidence from destruction or concealment. In *State v. Caraher, supra,* this court reshaped the second justification for searches incident to arrest (to preserve evidence) in several important respects. Under Article I, section 9, a search incident to arrest for crime evidence is limited to a search for evidence of the crime for which the arrestee is arrested. In order to justify a search, incidental to an arrest, the arrest must be for a crime, evidence of which reasonably could be concealed on the arrestee's person or in the belongings in his or her immediate possession at the time of the arrest. Thus, for example, if the person is arrested for a crime which ordinarily has neither instrumentalities nor fruits which could reasonably be concealed on the arrestee's person or in the belongings in his or her immediate possession, no warrantless search for evidence of that crime would be authorized as incident to that arrest. Of course, a pat-down or limited search for weapons to protect the officer or to prevent escape would be justified whenever a person is taken into custody.

---

[2] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

*State v. Caraher, supra,* should thus be viewed as returning Oregon search and seizure law to the traditional rule, based upon *State v. O'Neal,* 251 Or 163, 444 P2d 951 (1968), and *State v. Krogness,* 238 Or 135, 388 P2d 120, *cert den* 377 US 992 (1964), which limited searches incident to arrest to searches for evidence of the crime for which the arrest was made. In so doing, this court rejected *State v. Florance,* 270 Or 169, 527 P2d 1202 (1974), which had adopted the federal rule for searches incident to arrest, as announced in *United States v. Robinson,* 414 US 218, 94 S Ct 467, 38 L Ed 2d 427 (1973), and *Gustafson v. Florida,* 414 US 260, 94 S Ct 488, 38 L Ed 2d 456 (1973). That federal rule permitted full searches of the person incident to any lawful custodial arrest, based upon the rationale that the right to search flowed automatically from a lawful custodial arrest because the arrest itself had so thoroughly involved the arrested person's privacy that further intrusions had no independent constitutional significance. Our decision in *Caraher* made it clear that, under the Oregon Constitution, the fact of arrest does not grant an unqualified right to search an arrestee's person for crime evidence.

*Caraher* should be viewed as modifying search incident to arrest law under the Oregon Constitution in a second important respect. As long as the search is for evidence of the crime for which the arrest was made, and such evidence reasonably could be concealed on the arrestee's person or in the belongings in his or her immediate possession at the time of the arrest, no "container rule" blocks the intensity of the incidental search. In reasserting this court's duty to interpret the protections afforded Oregonians by our state constitution independently from the federal constitution, we eschewed the federal practice of cataloguing items of personal property carried on the arrestee's person. 293 Or at 756. The federal analysis required courts to determine which "portable repositories" were worthy of constitutional protection and which were not, and it only served to increase the confusion in this area. We said:

> "We are reluctant to embark upon the task of cataloguing items of personal property in the manner required by adherence to federal cases. We find that the focus on the character of the property searched has led to results which seem too frequently to turn upon fortuitous circumstances

surrounding how one chooses to transport personal belongings and has resulted in failure of a more straightforward assessment of those individual protections against government intrusion which constitutions, both state and federal, seek to preserve." 293 Or at 756.

■ Thus, the Oregon Constitution authorizes the meticulous investigation of closed containers, such as wallets, purses, cigarette cases and other personal "effects," found on or immediately associated with the arrestee, but only when it is reasonable to believe that evidence of a crime for which the person was arrested could be concealed there. The authority to search the person incident to a lawful custodial arrest rests upon what is known about the crime and the arrestee. The test is the reasonableness of the search in light of the circumstances of the particular case.

■ Another point relevant to an incidental search analysis under Article I, section 9, is that the search of "effects" found on or carried by the arrestee is authorized even after these "portable repositories" of personal effects have been removed from the arrestee's immediate control and are under the exclusive control of the police at the time of the search. It is enough that the arrestee had the personal effects in his or her possession at the time of the arrest; the police are not required to show that the arrestee retained possession at the time of the search. *See State v. Caraher, supra,* 293 Or at 759.

■ Applying the above analysis to defendant's contentions, we conclude, as did the Court of Appeals, that the search of defendant's purse, including the small clutch purse found inside the purse, was reasonably related to defendant's arrest for Theft. It was reasonable for the police officer to believe that the purse or clutch purse contained other small items stolen from the store. The officer was not required to accept as true defendant's statement that she had removed everything that she had stolen from her purse and had laid it on the table. The search of defendant's purse and clutch purse was reasonable in time, space and intensity to her arrest for Theft.

■ The seizure of defendant's clutch purse was also valid, because the officer lawfully observed what he had probable cause to believe was contraband therein. When an officer has probable cause to believe that an object he has lawfully discovered is contraband and, therefore, that a crime

is being committed in his presence, he has the right to seize it. *State v. Elkins,* 245 Or 279, 284, 422 P2d 250 (1966).

■ The next question is whether the opening of the two compact mirror cases in defendant's clutch purse was lawful without a warrant. As discussed above, the inquiry is whether the search of the two compact mirror cases was relevant to the crime for which defendant was arrested, and whether it was reasonable under the circumstances. Defendant argues that the search of the two compact mirror cases was not relevant to the crime for which she had been arrested, Theft. While this is true, it does not end the inquiry.

■ In order to search incident to arrest, the officer must have either an arrest warrant or probable cause to believe that the suspect has committed an offense. ORS 133.235, 133.310. Not infrequently, an officer will have probable cause to arrest a suspect for more than one offense. For example, in the course of an arrest for a traffic offense, evidence is sometimes seen in plain view which gives the officer probable cause to believe that another, more serious, crime has been committed or is being committed in his presence.

Such was the case in *State v. Krogness, supra,* which involved the stop of an automobile for a minor traffic violation. The arresting officer superficially inspected the automobile and observed something in plain view which, based upon his past experience, was held to give the officer probable cause to believe that a game violation had occurred. The subsequent search of the automobile, which revealed implements and fruits of a recent burglary, was upheld as a search for evidence of a game law violation. This court said:

"Where the officer, without trespassing, sees contraband or other evidence reasonably causing him to believe that contraband is being transported or that some other crime is being committed in his presence, he may have probable cause to make an arrest for the newly discovered offense as well as for the traffic offense which initially brought the subject to the attention of the officer. In such a case, while there may be no distinct demarcation between the first and second arrest, there does exist, prior to any extensive search, a probable-cause foundation for an arrest for an offense more serious than a traffic violation. The officer then is justified in making such a search as may be commensurate with the gravity of the newly discovered situation. Probable cause to arrest for the

more serious offense, when present, will answer constitutional objections to the rigor of the ensuing search. * * *

"* * * Intervening probable cause to arrest for a serious offense, if it came about in a legitimate manner, can make legitimate a search that would have been unreasonable if undertaken as an 'incident' of the traffic arrest alone. * * *" 238 Or at 145.

*See also State v. O'Neal, supra,* 251 Or at 167, and *State v. Cloman,* 254 Or 1, 456 P2d 67 (1969).[3]

■     When there is probable cause to arrest a suspect for a crime, a reasonable search incident to arrest for evidence of that crime may be upheld, even if the officer does not articulate to the arrestee that this is the crime for which he is being arrested and searched. *State v. Cloman, supra.* Probable cause under the Oregon Constitution has both a subjective and an objective component. An officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances. The test is not simply what a reasonable officer *could have* believed when he conducted a warrantless search or seizure, but it is what this officer actually believed, based upon the underlying facts of which he was cognizant, together with his own training and experience. Neither is the test whether the officer articulates to the suspect the basis for a second ground for arrest. What is required is that the officer formulates such a basis to himself at the time he acts.

■     Under the Oregon Constitution, a search incident to arrest is valid when it relates to a crime which there is probable cause to believe the arrestee has committed, and when it is reasonable in all the circumstances. *State v. Caraher, supra.* This probable cause requirement properly limits the objects to be sought in searches incident to arrest, and thus limits the intensity of the search. We reiterate, as we did in *State v. Lowry, supra,* 295 Or at 348, that a search incident to arrest does not justify an "exploratory seizure" of "everything in [the arrestee's] immediate possession and control upon the prospect that upon further investigation some of it

---

[3] *See* the discussion of "escalating probable cause" in *State v. Flores,* 68 Or App 617, 629-32, 685 P2d 999 (1984).

might prove to have been stolen or to be contraband," quoting from *State v. Elkins, supra,* 245 Or at 287.

■ The search of the two compact mirror cases in defendant's clutch purse was a valid search incident to arrest for evidence of the crime of Possession of a Controlled Substance. Having already discovered the vial containing white powder, which the officer had probable cause to believe was a controlled substance, it was reasonable for the officer to believe that he might find other such contraband in defendant's clutch purse. *State v. Caraher, supra.* Having discovered some evidence did not prevent him from searching further. The opening of the two compact mirror cases in defendant's clutch purse was reasonable in time, space and intensity. Because the officer had probable cause to believe that the white powder in the clear plastic packet was a controlled substance, its seizure was also valid.

■ Defendant's final argument is, because she was not charged with the crime of Possession of a Controlled Substance until several weeks after her arrest for Theft and the contemporaneous seizure of the vial and packet, that the search cannot be justified as related to her "arrest" on the Possession charge. We disagree. The timing of the actual charge is not relevant to determining the validity of a search incident to arrest. The relationship of the search to the new crime for which the officer has probable cause to arrest, and the reasonableness of the search in time, space and intensity to the new crime are judged as of the time the officer has probable cause to arrest for the new crime. If there is probable cause for the second arrest, the fact that the arrestee, for any number of reasons, is later, or never, charged with the second crime is irrelevant to a determination of whether the search incident to the arrest was lawful at the time it occurred.

## B. Confirmatory Chemical Testing.

■ The question which is squarely before this court for the first time in this case is whether the opening of a transparent container or the testing of its contents is a "search" or "seizure" under the Oregon Constitution, when there is probable cause to believe that it contains a controlled substance. If the intrusions are "searches" or "seizures," they require probable cause and a search warrant or separate justification under one of the few, carefully circumscribed

exceptions to the warrant requirement. Not all government intrusions, however, trigger Article I, section 9, protections.

Article I, section 9, protects privacy and possessory interests. A "search" occurs when a person's privacy interests are invaded. When the police lawfully seize a container, they can thoroughly examine the container's exterior without violating any privacy interest of the owner or the person from whom the container was seized. For example, the police can observe, feel, smell, shake and weigh it. Furthermore, not all containers found by the police during a search merit the same protection under Article I, section 9. Some containers, those that by their very nature announce their contents (such as by touch or smell) do not support a cognizable privacy interest under Article I, section 9. Transparent containers (such as clear plastic baggies or pill bottles) announce their contents. The contents of transparent containers are visible virtually to the same extent as if the contents had been discovered in "plain view," outside the confines of any container. Applying the doctrine of "plain view" to transparent containers, we hold that no cognizable privacy interest inheres in their contents, and thus that transparent containers can be opened and their contents seized. No warrant is required for the opening and seizure of the contents of transparent containers or containers that otherwise announce their contents. Under the Oregon Constitution, a lawful seizure of a transparent container is a lawful seizure of its contents.

When there is probable cause to believe that a lawfully seized substance is a controlled substance, a chemical test, for the sole purpose of determining whether or not it is a controlled substance, is neither a "search" nor a "seizure" under Article I, section 9. It is not a "search" if the purpose of the test of a lawfully seized item is to confirm the presence of whatever the police have probable cause to believe is present in that item. A test for such a limited purpose does not infringe any privacy interest protected by the Oregon Constitution.[4]

---

[4] Defendant relies upon *State v. Lowry*, 295 Or 337, 667 P2d 996 (1983), arguing that it controls and requires that a warrant be obtained for the opening of the vial and packet and the testing of their contents. *Lowry*, however, is factually and legally distinguishable in at least one important respect and does not control the decision herein. In *Lowry*, the searching officer seized the transparent, amber pill bottle and had the contents tested even though he did not testify that he had any reason to believe that the bottle contained a controlled substance. Either the officer had made

Likewise, a test for this limited purpose is not a "seizure." A "seizure" occurs when there is a significant interference with a person's possessory or ownership interests in property. The seizure of an article by the police and the retention of it (even temporarily) is a significant intrusion into a person's possessory interest in that "effect." However, once the item has been lawfully seized, the person's possessory interest in that property has been substantially reduced. The additional retention of the item, for the limited purpose of chemical analysis or testing, is not a substantial interference with that possessory interest. While it is true that the testing of the item may change a temporary interference with a small amount of the substance into a permanent deprivation, the amount destroyed by testing in most cases is so small that any effect on a person's property interest is *de minimis.*

Therefore, we hold that, when there is probable cause to believe that a lawfully seized transparent container contains a controlled substance, opening the container, removing a modest quantity of its contents and subjecting it to chemical analysis for the sole purpose of confirming that it is a controlled substance, is not a "search" or "seizure" under the Oregon Constitution. Any language to the contrary in *State v. Lowry, supra,* is expressly disapproved. Article I, section 9, does not require that the police obtain a warrant before opening the transparent vial and clear plastic package lawfully seized from defendant's purse herein or testing their contents for the limited purpose of confirming the police officer's reasonable belief that they contained controlled substances.

■■■ Neither would a warrant be required by the Fourth Amendment to the United States Constitution. *Arkansas v. Sanders,* 442 US 753, 764 n 13, 99 S Ct 2586, 61 L Ed 2d 235 (1979); *United States v. Jacobsen,* 466 US 109, 104 S Ct 1652, 80 L Ed 2d 85 (1984).

---

no conclusions regarding the contents of the bottle, or he failed to articulate them. It was apparent from the testimony that the "traffic officer" who arrested the defendant in *Lowry* lacked experience in the area of drug enforcement. He lacked probable cause either to seize the pill bottle or to test its contents.

The officer in the present case, in contrast to *Lowry,* had probable cause to believe that the small, transparent vial and clear packet he seized from defendant contained controlled substances. He had probable cause to seize the vial and packet, to open them, and to submit their contents for chemical analysis.

The decisions of the Court of Appeals and the trial court are reversed. The case is remanded for trial.

**GILLETTE, J.,** concurring.

I concur in the majority opinion. I write separately because it seems to me to be wrong to attempt, as the dissent does, to make some sort of juridical virtue out of intellectual intransigence.

The dissent states:

"* * * [T]oday the court holds that a warrant is not required [to make constitutionally permissible the chemical testing of the contents of containers of suspected controlled substances validly seized from arrested persons].

"Such a reversal deserves explanation, but it is not to be found in the majority's opinion.* * *

"I am confident that the majority does not and cannot mean what it has written * * *. Apart from its contraction of constitutional rights, * * * *the majority's failure to explain its departure from precedent is in itself a threat to constitutional rights.* Without a consistent and reasoned analysis, rights protected by Article I, section 9, will disappear whenever four members of the court are persuaded that it is expedient that they do so." 302 Or at 215-16 (emphasis supplied)(footnote omitted).

I took no part in *Lowry*. Two other members of the present majority concurred separately in *Lowry*. The author of the present majority decides today's case for five of us. He is in no position to defend himself or the other member who joined in *Lowry* and now joins in this decision. They have not asked for any separate vindication but I feel obliged to try to provide one, in any event.

I should like to think that the Oregon Constitutional Revolution has been accomplished. The primacy of our state's constitution, so long neglected, is now accepted by all. It remains to go forward on a new road, a road which will — like most roads under construction — involve an occasional detour.

I have always believed — and, today, a majority of this court holds — that a small part of the *Lowry* analysis was such a detour. All of us endorse the *Lowry* outcome. However, some of its analysis has come under sufficient attack (albeit

from such occasionally overly enthusiastic observers as myself)[1] that I should like to think that any reasoning person would take a second look with an open mind.

By the dissent's argument, however, an open mind is not permitted. No matter how new the road, how unmarked and untried the course, the first step down it is "precedent" of such preeminence that any retreat is heresy. That position is not only wrong, it is wholly incongruous coming, as it does, from the pen of one who has written,

> "* * * As I have written on an earlier occasion, when the court errs in construing a statute, *as distinguished from a constitutional provision* or the common law, correction should be made by the legislative department of government. See my separate opinion in *State v. Newton,* 291 Or 788, 815, 636 P2d 393, 410 (1981)." *Broyles v. Estate of Brown,* 295 Or 795, 804, 671 P2d 94 (1983) (Lent, J., dissenting) (emphasis supplied).

I agree with that dissent; I find it hard to reconcile with either the language or the tone of the present dissent.

As to the merits, something also needs to be said, but that something needs to address both the present dissent and that of Justice Linde in *State v. Brown,* 301 Or 268, 279-298, 721 P2d 1357 (1986). The two dissents strike the same theme, claiming that permitting the chemical analysis of the contents of containers — opaque, translucent or transparent — taken from arrested persons violates Article I, Section 9 of the Oregon Constitution. The majority is content — as it has every right to be — with rejecting the foregoing proposition. I prefer to say more.

The chemical analysis in this case was of material seized incident to an arrest. The search of an arrested person for the fruits and instrumentalities of the crime for which he was arrested, as well as for devices he might use to assault the officer or in effecting an escape, is an entirely rational and reasonable act that, at least until recently, no one has seriously challenged on constitutional grounds. The burglar's loot, the highwayman's mask, the assassin's knife — all could

---

[1] *See State v. Flores,* 68 Or App 617, 685 P2d 999 (1984) (Gillette, J.); *State v. Westlund,* 75 Or App 43, 53 - 59, 705 P2d 208, (1985) (Van Hoomissen, J., dissenting), *aff'd in part, rev'd in part,* 302 Or 225, 729 P2d 541 (1986).

be searched for and seized from the person of an arrested felon without a warrant. *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982); *State v. Brown, supra,* 301 Or at 283 (Linde, J., dissenting); *see also State v. Atkinson,* 298 Or 1, 688 P2d 832 (1984).

I do not understand the dissents to disagree with the foregoing proposition as an abstract matter. Rather, their objection lies with the application of the principle or, more specifically, to the number of times it is applied.

A short (but, I hope, fair) version of the dissents' views may be abstracted from Justice Linde's dissent in *State v. Brown, supra,* 301 Or at 285-293:

"The conditions of law enforcement have changed since the adoption of the fourth amendment and its state counterparts in the 18th and 19th centuries. The notion of crime as an exceptional and abnormal event calling for a judge to authorize someone to seize a known offender or to search for him or for stolen goods in a specified place may never have been accurate. In this century, those simple assumptions have undergone radical changes. The growth of cities and the use of automobiles and airplanes gave offenders new mobility and anonymity. Law enforcement was delegated to and administered by large police organizations, and governments chose to rely on criminal law in attempts to control first alcohol and then other drugs by prohibitions on production, trade, possession, and use that depend on finding, seizing, and identifying evidence without the aid of a victim. The entire process still is legally required to be supervised by judges, but the task is no more popular with courts than it is with law enforcement officers.

"* * * * *

"* * * [One] device for evading the warrant requirement is to create or expand exceptions for searches or seizures that of necessity must be made without awaiting a warrant (specifically searches of an arrested person or for items that an officer cannot keep under control) beyond their original and necessary scope. * * *

"* * * [Another] is to manipulate what constitutes a 'search' requiring a warrant. In ordinary speech, 'search' connotes a purpose or intention of the searcher; one searches whenever one acts with the aim of finding something. But it has long been held that purposeful looking or listening alone does not make unlawful a warrantless search of what can be

seen in plain view or overheard without the aid of technical enhancement. *See, e.g., State v. Louis,* 296 Or 57, 672 P2d 708 (1983). * * *

"* * * * *

" 'Search-incident-to-arrest' has become one of those legal talismans that, although it is in English rather than Latin, has left its rationale behind. What justifies a warrantless search of a person under arrest is not that there is probable cause to believe that the person has committed a crime. It is not that an officer who has valid reason to make an arrest also has valid reason to search for evidence of the crime for which he makes the arrest. If reasons sufficient for an arrest by themselves sufficed to dispense with a search warrant, the actual arrest would be immaterial and unnecessary for the search. That obviously is not the law.

"To the contrary, an arrest is the crux of a 'search-incident-to-arrest.' By definition a search 'incident to' an arrest is a warrantless search that is justified by the fact that a suspect is arrested. The justification arises from the practical consequences of taking a person into custody, and it cannot extend beyond those practical consequences if the fact of the arrest is its premise. * * *

"* * * * *

"* * * [*I*]*f the fact of an arrest is to make the difference between a permissible and an impermissible warrantless search, the difference must arise from the necessary consequences of taking a person into custody. The fact of an arrest alone cannot logically bootstrap officers into any wider warrantless search than they could conduct without making the arrest.*

"* * * * *

"The principle that prior judicial authorization for a search must be the rule and warrantless searches a narrowly confined exception should be more than a comforting fable in appellate opinions, but in practice it is no more than that. According to a recent study by the National Center for State Courts, this appears from a number of examinations of search warrant practices over the past quarter century. Van Duizend, Sutton & Carter, The Search Warrant Process x (1984). The authors of the study reported:

> " 'The vast majority of searches are conducted without a warrant, usually with the consent of the suspect (or someone in legal control of the area to be searched) or incident to the arrest of the suspect. Delay

and inconvenience were widely cited as the principal basis for officers' reluctance to seek a search warrant.

" '* * * * *

" 'We also were told of a host of other strategies that police use to conduct a search without having to go to the trouble of obtaining a warrant, such as by timing an arrest so as to maximize the possibility of being in a position to conduct a search legally and seize any contraband that might be discovered as a result (e.g., by arresting suspected drug dealers in their cars rather than at home.' *Id.* at 19 (footnote omitted).

"For Portland, Oregon, the study reported 41,303 'index crimes' in 1980 and only 319 search warrants. *Id.* at 18." (Footnotes omitted; emphasis supplied.)

Even more shortened, one portion of the dissents' thesis is this: Search warrants are the rule, warrantless searches the exception. While it is true that traditional constitutional doctrine has always recognized the permissibility of searching a person who has been arrested and is to be taken to jail, such searches now so often lead to the discovery of suspected drugs that some constitutional restraint on the process must be created.

The fallacy with this approach begins at the beginning and is best described as the mathematical model to constitutional law. If warrants are preferred, the dissents seem to suggest, the system is out of balance so long as more searches occur without warrants than occur pursuant to them. I doubt that there is any historical justification for this view.[2] It is difficult to imagine any time in this country's history when warrantless arrests and the searches incident to them would not have far outnumbered all law enforcement activities pursuant to warrant. I see no historical basis for declaring that the mathematical imbalance creates a constitutional imbalance.

But the dissents' mathematics are, I think, really a

---

[2] Justice Linde himself seems to have his doubts, for he notes,

"* * * The notion of crime as an exceptional and abnormal event calling for a judge to authorize someone to seize a known offender or to search for him or for stolen goods in a specified place may never have been accurate * * *." *State v. Brown,* 301 Or 268, 285-86, 721 P2d 1357(1986) (Linde, J., dissenting).

side issue. The core of their argument raises a far more interesting problem — a problem that, I concede, the majority opinion in this case does not fully address. Assuming, the dissents say, that a warrantless search incident to an arrest is permissible to protect the officer, prevent escape and avoid the destruction of evidence, how is the later opening and/or testing of something taken from the arrestee — an action we today hold to be constitutional — related to any of these legitimate purposes? And, if it is not so related, have we not expanded the "narrow" exceptions to the warrant requirement?

I do not think we have expanded the exception. The search of an arrested person may be as intensive as the nature of his offense justifies. *State v. Caraher, supra.* Thus, the intensity of a search of a man arrested for stealing an elephant may be quite limited, while the intensity of the search of one arrested for unlawful possession of controlled substances may be very great. It may, in the latter case, extend to opening containers, or containers-within-containers, until even relatively small amounts of powder or vegetable material have been totally uncovered and separated. *State v. Caraher, supra.*[3]

All of this search incident to arrest activity can — and sometimes does — occur on the scene of the arrest. On other occasions — the large majority, I suspect — officers postpone opening the final container until they can transport it to a more controlled environment — usually, a laboratory. If it could be done at the scene without a warrant, I see no justification for requiring a warrant because the officer waited. That is what *Caraher* held and what today's opinion reiterates.

The only activity not likely to happen at the scene is the chemical or other scientific analysis of seized evidence, although even this may occur at the scene in the form of a "field test." The dissents in these cases, following *State v. Lowry,* wish to treat these scientific analyses as separate

---

[3] It follows that the majority's repeated emphasis on the nature of the container in this case is relevant to probable cause but not to the permissible scope of any search incident to the arrest resulting from the probable cause. If a container may hold evidence of a crime for which a person is validly arrested, the kind of container — be it transparent, translucent, opaque, hard, soft, porous or hermetically sealed — is not relevant. It may be opened. *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982).

searches that require a warrant because they are not a neces-
sary consequence of taking a person into custody. I have a
difficult time seeing how — assuming such testing is a search
— it is any less connected with the arrest than was the
opening of successively smaller containers. I would, therefore,
reject the dissents' ultimate conclusions, even if I accepted
their rationale. I do not, however, agree with the dissents'
rationale. The majority holds that scientific analysis is not a
search. I agree, in light of the circumstances the dissents'
approach necessarily encompasses: Confirmatory chemical
analysis of seized mature marijuana plants; chemical analysis
of blood spots found on an assault suspect's shirt; microscopic
analysis of paint chips on a burglar's prybar; scraping of
gunpowder residue from inside a murder defendant's gun; test
firing a bullet through that same gun. Those are not searches.

A constitution is not a document of convenience. Its
terms are to be enforced without regard to the mood of the
times, else it is no constitution at all. At the same time, a
constitution is not a document of unreason. It was created in a
context and should be read and interpreted with the odd touch
of deference for experience, history and reason. If we could call
from their sleep this day the authors of the Fourth Amend-
ment and the architects of Article I, section 9, of the Oregon
Constitution, if we could explain to them the technological
advances that make such testing possible and if we could then
put to them the question of whether the spirit of the constitu-
tional rules they authored called for the result for which the
dissents contend, I am satisfied to my soul that the uniform
response would be one of incredulity. That which has been
validly taken from an arrestee at the time of his arrest can —
if the arrest was proper — be touched, smelled, tasted, tested
or test fired without a warrant. Those who feel compelled to
carry the evidence of their crimes with them deserve no new
constitutional help.[4]

---

[4] All of the foregoing seems to me to flow naturally from traditional search-
incident-to-arrest analysis, and the majority is entitled to be content with it. There is,
however, one problem with all this that our majority view does not answer. It is this:
What is so magical about an arrest? Suppose an officer, who is in a place where he has
a right to be, sees a distinctive "bindle" that he knows, from his training, contains a
controlled substance. He seizes it. There is no one present to arrest, so the seizure is a
warrantless, "plain view" seizure. Can the officer now go and open *this* container or
test *its* contents without a warrant? If the answer is no, what is there about these
circumstances — aside from labels — that makes them different from those where an

**LENT, J.,** dissenting.

The main issue presented by *State v. Owens,* 302 Or 196, 729 P2d 524 (1986), *State v. Forseth,* 302 Or 233, 729 P2d 545 (1986), and *State v. Westlund,* 302 Or 225, 729 P2d 541 (1986), is whether a warrant is required to open a transparent container and chemically analyze its contents. That issue could have been resolved in the affirmative with a simple reference to *State v. Lowry,* 295 Or 337, 667 P2d 996 (1983), but today the court holds that a warrant is not required.

Such a reversal deserves explanation, but it is not to be found in the majority's opinion.[1] The majority confronts neither *Lowry* nor, more importantly, the warrant issue. Instead, it sidesteps both with its holding, unsupported by either written reason or citation to any other court's reasoning, that opening a transparent container and chemically analyzing its contents does not infringe any rights under Article I, section 9, of the Oregon Constitution.[2]

I am confident that the majority does not and cannot mean what it has written; rather, unwilling to confront the warrant requirement, it has created a *de facto* exception to the requirement through the only other means available to it. Apart from its contraction of constitutional rights, however, the majority's failure to explain its departure from precedent

---

arrest was made? And if the answer is yes — opening and testing without a warrant are permissible — isn't that truly an expansion of the permissibility of warrantless searches?

The foregoing conundrum necessarily arises from what we do today. It may be that there is a valid distinction between the two sets of circumstances such as the fact that, with searches incident to arrest, the officer's actions are always subject to observation by someone else. The answer must await a case that requires it.

[1] I cannot fathom the concurring Justice's contention that this dissent castigates the majority simply for not following *State v. Lowry,* 295 Or 337, 667 P2d 996 (1983). If the court errs in construing a constitutional provision, I certainly agree that the court should correct the error. The court has an obligation, however, to state why the court was then in error and why the court is now correct; self-satisfaction with the new result is not sufficient. To point to such an obligation is hardly an effort "to make some sort of juridical virtue out of intellectual intransigence." 302 Or at 208.

In addition, the concurring opinion's reference to "the mathematical model to constitutional law," 302 Or at 212, is bizarre. This "model" bears no resemblance to anything that I can find in Justice Linde's dissent in *State v. Brown,* 301 Or 268, 279, 721 P2d 1357 (1986), much less this dissent.

[2] This dissent applies to the majority's approach to all of the above-mentioned cases, as well as to *State v. Herbert,* 302 Or 237, 729 P2d 547 (1986).

is in itself a threat to constitutional rights. Without a consistent and reasoned analysis, rights protected by Article I, section 9, will disappear whenever four members of the court are persuaded that it is expedient that they do so.

The relevant facts in *Owens, Forseth, and Westlund* do not significantly differ. In each case, during a search for other items, police discovered a small, transparent glass vial or plastic bag containing an unidentified powder. The police seized the container because they suspected that the powder was a controlled substance. Later, without obtaining a warrant, police opened the containers and chemically analyzed their contents.

I assume, as did this court in *Lowry*, 295 Or at 346, that the containers were lawfully seized.[3] The question, then, is whether a warrant was required before opening the containers and testing their contents. Under *Lowry*, the answer is clearly yes. 295 Or at 348.

## I.

The majority holds that no warrant is required for opening a transparent container because such an action is not a "search" under Article I, section 9. The conclusion that opening a transparent container is not a search is based on the following sequence of assertions: (1) "[a] 'search' occurs when a person's privacy interests are invaded"; (2) "containers * * * that by their very nature announce their contents * * * do not support a cognizable privacy interest under Article I, section 9"; (3) "[t]ransparent containers * * * announce their contents [because their contents are] visible virtually to the same extent as if the contents had been discovered in 'plain view,' outside the confines of any container." While the first assertion can be accepted as a truism, the second assertion is merely an *ipse dixit,* and the third is patently incorrect.

---

[3]The majority states that if a person is arrested, no search warrant ever is needed to search a container taken from the person for evidence relating to the crime for which the arrest is made or later is said to have been made. *State v. Owens,* 302 Or at 201-205. Justice Linde and I have maintained that this is not the correct reading of the warrant requirement. *State v. Caraher,* 293 Or at 741, 770, 653 P2d 942 (1982) (Lent, J., dissenting). It attributes exaggerated importance to the choice whether or not to arrest a suspect, a decision which itself ordinarily rests only on an officer's determination of probable cause and which, therefore, does not give the warrantless search any greater legal basis than it would have without the arrest. *See State v. Brown, supra,* 301 Or at 289-90 (Linde, J., dissenting).

If the sense of sight were alone capable of unerringly identifying substances, the majority's assertion that transparent containers "announce their contents" might be valid. But, obviously, this is not true. For example, a white powder might be baby powder, cocaine, confectioners' sugar, or arsenic. While a transparent container does not exclude the sense of sight, it does exclude other senses. A clear liquid in a closed bottle might be mineral water or gin. If the bottle were opened, there would be no doubt. The notion that a transparent container is inherently devoid of any privacy interest because it does not exclude the sense of sight is simply indefensible.

More importantly, even assuming that containers, transparent or not, can "announce their contents," the majority's assertion that such containers do not support a cognizable privacy interest under Article I, section 9, does not follow. The majority's rationale apparently is that, since the contents of such a container are by definition known, opening the container does not infringe any privacy interest. But this rationale confuses privacy with secrecy.[4] Privacy certainly includes secrecy, but this is a relatively recent development that can be traced to *Katz v. United States,* 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967). Prior to *Katz,* a search was defined in terms of a physical trespass to a "constitutionally protected area," i.e., a trespass to "persons, houses, papers, and effects," regardless whether anything "secret" was at risk of discovery. Amsterdam, *Perspectives on the Fourth Amendment,* 58 Minn L Rev 349, 356-57 (1974); 1 LaFave, Search and Seizure § 2.1, at 223-24; *see Olmstead v. United States,* 277 US 438, 465, 48 S Ct 564, 72 L Ed 944 (1928); *State v. Hilton,* 119 Or 441, 444-45, 249 P 1103 (1926). Physical invasions of these "areas" were the only ways in which the eighteenth century framers of the Fourth Amendment and the mid-nineteenth century framers of Article I, section 9, could conceive of an invasion of privacy. *See* Landynski, Search and Seizure and the Supreme Court 198-205 (1966). In *Katz,* the Court recognized that a new doctrine was needed to protect

---

[4] If a police officer on a social visit to someone's home took away a small sample of pills or of a powder from his hosts' toilet cabinet to determine its composition, I doubt we would hold that he had not trespassed upon an interest recognized by the tort of invasion of privacy. *Cf. McClain v. Boise Cascade Corp.,* 271 Or 549, 533 P2d 343 (1975). Trespass, of course, was and is the common law's characterization of an unwarranted official entry on private premises or seizure of persons or effects.

privacy from technological developments such as electronic surveillance. *Katz v. United States, supra,* 389 US at 348-353. Such surveillance was not in itself perceived to be objectionable in the same manner as a trespass; rather, it was objectionable because of the information that it could uncover. Hence, the Court in *Katz* and subsequent cases developed an analysis that enlarged the scope of protection afforded by the Fourth Amendment based on the expectation of privacy in information. This expectation of privacy analysis was not meant to supplant, but to supplement, the older trespass analysis. *State v. Louis,* 296 Or 57, 60, 672 P2d 708 (1983). Although this court has on occasion employed the *Katz* analysis, *see State v. Holt,* 291 Or 343, 630 P2d 854 (1981), the older trespass analysis retains its validity, *Louis,* 296 Or at 60.

Opening a closed container is nothing less than a trespass upon an "effect." As such, it is a "search" under Article I, section 9. *See, e.g., State v. Keller,* 265 Or 622, 625-26, 510 P2d 568 (1973) (opening fishing tackle box a search); *State v. O'Neal,* 251 Or 163, 444 P2d 951 (1968) (opening wallet and observing contents described as a search). Knowledge of the contents of a protected "area" is irrelevant to the question whether an invasion of that "area" is a "search." Such knowledge may provide *justification* for the invasion, but it cannot negate the constitutional character of the invasion. For example, police may lawfully be able to observe the entire contents of a small garage through a window that opens onto a public street, but this fact is irrelevant to whether an entry into the garage is a "search." *See Coolidge v. New Hampshire,* 403 US 443, 468, 91 S Ct 2022, 29 L Ed 2d 564 (1971) ("plain view" alone cannot justify a warrantless search or seizure); *State v. Tremaine,* 56 Or App 271, 641 P2d 637 (1982) (same); *cf. State v. Olson,* 287 Or 157, 164-65, 598 P2d 670 (1979) (probable cause to arrest does not justify forced entry into home). If the police observe marijuana plants in the garage and, based on their experience, they are virtually certain that the plants are in fact marijuana plants, an entry into the garage will nonetheless be a search that will require a warrant unless some exception applies. Similarly, virtually the entire passenger compartment of a car is generally within the view of anyone who wishes to look. This does not mean that the passenger compartment cannot support a cognizable privacy interest under Article I, section 9. Even if the police observe

obvious contraband on the front seat and, therefore, are justified in seizing the car, an entry into the car to seize the contraband is a "search" that must be made in a manner consistent with Article I, section 9.

I doubt that the majority would seriously quarrel with the preceding analysis. Their difficulty is not with the scope of the words "search" or "effects" in Article I, section 9, but with that section's warrant requirement. I suspect that in back of the notion that transparent containers do not support a cognizable privacy interest is the feeling that the police know what they will find, that the issuance of the warrant is practically inevitable, and that requiring a judge to issue a warrant under these hypothesized circumstances is pointless. *See, e.g., State v. Lowry, supra,* 295 Or at 359 (Jones, J., specially concurring); *State v. Flores,* 68 Or App 617, 627, 634, 685 P2d 999 (1984) (opinion of Gillette, J.).

I am not so convinced of the unerring ability of the police, or judges for that matter, to divine which containers "announce their contents." Moreover, Article I, section 9, is clear that determinations of probable cause are to be made by magistrates prior to the invasion of privacy unless one of the well-established exceptions to the warrant clause is applicable. If the majority believes that a warrant should not be required to open a transparent container, it should justify its conclusions in terms of the warrant clause, rather than through tinkerings with the scope of Article I, section 9, based on muddled or nonexistent analysis.[5] If it cannot justify its conclusions in terms of that clause, then it should follow that clause's mandate.

---

[5] The concurring opinion, perhaps implicitly conceding that opening a container and testing its contents are searches under Article I, section 9, seeks to justify the actions of the police in this case under the search-incident-to-arrest doctrine. But that opinion itself expresses doubts, as well it might, about the cogency of extending that doctrine to containers not under the control of an arrested person. After having castigated the present dissenting opinion for relying on a recent precedent, *State v. Lowry, supra,* the concurring opinion, like the majority, simply cites *Caraher* as if that decision resolved all issues concerning search-incident-to-arrest. It did not. Moreover, the concurring opinion does not explain in what manner these searches were "close in time and space to the arrest," *State v. Caraher, supra,* 293 Or at 760. Even if the searches were somehow "close in time and space to the arrest," there is no justification for extending the doctrine of search incident to arrest to situations in which there is no practical necessity for a warrantless search. *See State v. Caraher, supra,* 293 Or at 770-71 (Lent, J., dissenting).

II.

The majority also concludes that, when a substance is lawfully seized and there is probable cause to believe that it is a controlled substance, a chemical test of the substance, for the sole purpose of determining whether or not it is a controlled substance, is not a "search" under Article I, section 9. This is a narrow holding, particularly in its limitation of testing to "whether or not" the substance is a controlled substance. If this language is to be taken at face value, a test that discloses that a substance is, for example, talcum powder, rather than simply that it is not a controlled substance, would be a "search."

The holding may be narrow, but it is nothing more than an *ipse dixit*. The majority's entire explication consists of three sentences without any citation to authority. The first sentence states the holding. The second sentence restates the holding as applied to the "search" issue. The third sentence alone provides a clue. That sentence suggests that a chemical test is not a "search" because its purpose is limited. The majority does not explain the basis for such a *de minimis* argument, does not explain why it would be applicable to this case, and does not explain the possible scope of its application to other cases.

There are a number of problems with this holding. First, the holding simply does not make any internal sense. In a commendable effort to limit the scope of its pronouncement, the majority would require probable cause to believe that the substance tested was a controlled substance. But, as noted above, "probable cause" is irrelevant to whether the action justified by probable cause is a "search." Moreover, if the test is not a "search" or "seizure" under Article I, section 9, there is no constitutional basis for imposing on the police a probable cause requirement, or indeed any requirement, even that of "reasonableness." So long as access to the substance was not obtained unlawfully, the police could test the substance for anything and for any reason or no reason.

Second, if the majority's holding permits testing that will tell the police precisely what the substance is, even if it is not contraband, then the majority's *de minimis* argument is somewhat difficult to comprehend. Any number of substances

look like contraband. For many of these substances, particularly legitimate medicines, knowledge that a person possessed them could be extremely damaging. Persons with medicines to control chronic health problems, such as epilepsy, heart disease or manic depression, might find their careers or relationships jeopardized. A test that could disclose such information could hardly be characterized as *de minimis.*

If the majority's holding is limited to tests that disclose only the presence or absence of contraband, its *de minimis* argument appears to be similar to that advanced by the United States Supreme Court in *United States v. Jacobsen,* 466 US 109, 104 S Ct 1652, 80 L Ed 2d 85 (1984). In *Jacobsen,* the Court held that an individual does not have a legitimate expectation of privacy in the possession of contraband. *Id.* at 123. The Court further held that a "field test" of a substance for the presence of cocaine was not a "search" because the test could reveal only whether the substance was cocaine and thus could not compromise any legitimate interest in privacy. *Id.*

There is, however, no "contraband exception" to Article I, section 9. Such an exception is unjustifiable in any case, either under Article I, section 9, or the Fourth Amendment. There is no constitutional differentiation in items that the police may search for and seize. "On its face [the Fourth Amendment] assures the 'right of the people to be secure in their persons, houses, papers, and effects * * *,' without regard to the use to which any of those things are applied." *Warden v. Hayden,* 387 US 294, 301, 87 S Ct 1642, 18 L Ed 2d 782 (1967). So does the Oregon constitutional text.

The notion that officers may seize "contraband" upon probable cause alone but do not need a warrant is wholly illogical. If the argument is that "contraband" is something that may not legally be possessed and, therefore, nothing is seized that belongs to the person from whom it is taken, that argument places the taking altogether outside the constitutional guarantee. On that theory officers also would not need probable cause to seize "contraband."

Understandably, the majority shies away from that result. It wants officers to have probable cause for the seizure but not to need a warrant to seize "contraband." But, as so often in search and seizure cases, the majority is blind to the

trap of reasoning backward from what the search or seizure ultimately reveals. If a warrant ordinarily would be required for a search or a seizure, its omission cannot be justified by the fact that the seized effects are "contraband." What if, despite probable cause to believe otherwise, the materials seized without a warrant prove to be something other than controlled drugs, or what if the owner turns out to have a prescription for them, so that a warrant was required after all? Does the failure to have obtained a warrant then turn out to have been unlawful and make the officer a trespasser liable for invasion of the possessor's rights? The majority has no answer for these intrinsic contradictions in its opinion.

The law of search and seizure largely came into existence to protect against searches for contraband. In England, this contraband was primarily unlicensed (and generally "seditious") publications; in America, it was primarily smuggled goods. Landynski, *supra,* at 19-48. John Hancock, for example, was a smuggler of goods. Landynski, *supra,* at 30 n 49. This is not to suggest that either Article I, section 9, or the Fourth Amendment gives criminals a substantive right to keep their activities secret from the government. Rather, both provisions are limitations on the power of executive officers to investigate the private affairs of individuals. Whether those "private affairs" include murder, drug smuggling, eccentric behavior, political activities, sexual relations, or simply reading a book or watching television, the limitation on the government is the same. We may not approve of some or all of these activities, but that is the point. The Star Chamber did not approve of anti-monarchical tracts. George III did not approve of colonial free trade. Richard Nixon did not approve of antiwar activists. The government's power to declare certain activities or possession of certain articles illegal does not give it the power to define the scope of constitutional safeguards against warrantless search and seizure.

The majority, of course, is not wholly insensitive to these concerns. That much is obvious from its requirement that there be probable cause to test. The majority's real *bete noire* is the warrant requirement. In these cases decided today, the majority has, in effect, simply upheld warrantless searches based upon probable cause. Unfortunately, the majority does not explain why warrants are unnecessary in these cases or reconcile these cases with our many cases that hold that

warrantless searches must be justified under some exception to the warrant requirement. In an effort to avoid such a difficult task, they have further muddied the requirements of Article I, section 9, and unjustifiably contracted its scope.

For years this court followed the rule that a warrantless search was *per se* unreasonable in the constitutional sense, and to be valid a warrantless search had to fall within one of the narrowly defined and circumscribed exceptions. Now, rather than finding an exception that fits, or even reasoning its way to a new exception, the majority holds that the trespass to these containers is simply not a search. That, at least, is to hold that the *Katz* analysis supplanted rather than supplemented prior doctrine, a holding contrary to what we so recently said in *State v. Louis, supra.*

This and other recent decisions of this court, such as *State v. Brown,* 301 Or 268, 721 P2d 1357 (1986), and *State v. Bennett,* 301 Or 299, 721 P2d 1375 (1986), mean that the present majority has reversed the longstanding rule that warrantless searches are limited to a few carefully delineated exceptions based on necessity. The majority's general rule now is that police officers almost always may seize and search a person or personal effects without a warrant on probable cause alone, except when they enter a house to do so and cannot persuade a judge that they obtained prior consent to do so, or in very limited circumstances such as in *State v. Kock,* 302 Or 29, 725 P2d 1285 (1986).

This reversal of direction is as unnecessary as it is tragic. It may seem futile to dissent at length when the members of the majority so readily abandon analyses that they themselves joined, presumably after attentive reading and consideration, as has recently happened also in *State v. Smith,* 301 Or 681, 725 P2d 894 (1986). The source of future protection of the rights of Oregonians, however, "remains the constitutional guarantee of a judicial warrant stated in Article I, section 9, enacted by the people in 1859, not what judges write about it." *State v. Brown, supra,* 301 Or at 298 (Linde, J., dissenting). It, therefore, is important once more to recall that what the majority has written is not the only, the best, or the final meaning to be given to that guarantee.

Finally, I feel constrained to say that I do not quite understand the purpose of the concurring opinion. That I have

written a dissent makes clear that I have been unable to convince the majority of the unsoundness of its opinion. Yet, the concurring opinion seems to be nothing more than a "dissent" from my dissent. That the concurring justice does not merely concur in the majority's result implies that he accepts the majority's analysis. If he does not, but would rather rest the result on a theory of search incident to arrest, he should concur only in the result and make it clear that only four members of this court believe that opening these containers and analyzing the contents were not searches.

Linde, J., joins in this dissenting opinion.