Argued and submitted May 14, reversed and remanded August 19, 2009

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DARYL MALVERN,
*Defendant-Appellant.*

Klamath County Circuit Court
0602275CR; A136110

215 P3d 114

George W. Kelly argued the cause and filed the brief for appellant.

Samuel A. Kubernick, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Anna M. Joyce, Assistant Attorney General.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

## LANDAU, P. J.

Defendant appeals a judgment of conviction for unlawful manufacture of marijuana. ORS 475.856. Defendant assigns error to the trial court's denial of his motion to suppress evidence obtained during what he contends was an unlawful search. We reverse and remand.

We take the facts from the trial court's undisputed findings. During a "flyover," Detective Mogle observed several marijuana plants growing on a piece of property later identified as defendant's.

The next week, Mogle and four other detectives went to defendant's property to investigate. They did not have a search warrant. Defendant's eight-acre property is entirely surrounded by a seven-strand barbed-wire fence. To enter the property, the detectives opened a closed wire gate that has a chain and a lock that was hanging open. Although defendant testified that he had posted "no trespassing" signs, the detectives did not see any such signs.

The detectives entered defendant's property in two separate vehicles, drove up to defendant's residence, and parked. They knocked on the door and called for defendant, who was not actually present on the premises at that time. The detectives then "began randomly walking around the property." They went to an area of the property that was not observable from the residence or the road leading to the residence. There, while "meandering" around the property, the detectives came upon a greenhouse that was covered by opaque plastic. Although they did not enter the greenhouse, they peered inside and saw several marijuana plants. Defendant was subsequently arrested and charged with unlawful manufacture of marijuana.

Before trial, defendant moved to suppress the evidence of the marijuana plants growing in the greenhouse. The trial court denied the motion to suppress, concluding that defendant did not adequately manifest an intention to exclude the public from his property. Defendant then pleaded guilty to the charged offense, reserving the right to appeal the denial of his pretrial motion.

On appeal, defendant contends that the trial court erred in denying his motion to suppress. He argues that the detectives entered his property unlawfully because it is surrounded by a barbed-wire fence, signed, and has a wire gate that was closed. Alternatively, defendant argues that, even if the detectives' entry onto the premises was lawful, their "meandering" around the property was not. The state responds that the trial court correctly concluded that defendant did not adequately manifest his intent to exclude the public from his property; thus, the state asserts, the detectives' entry was lawful. In response to defendant's alternative argument, the state argues that it was "reasonable" in this case for the detectives to look for defendant beyond the residence.

■       We begin with defendant's alternative argument, because it is dispositive. The issue is whether, in "meandering" around defendant's property after knocking on the residence door and getting no answer, the detectives invaded an interest protected by Article I, section 9, of the Oregon Constitution.

■       Article I, section 9, protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." Under that provision, a "search" is an intrusion by the government into the protected privacy interest of an individual. *State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986). Not all government intrusions trigger protection under that provision, however. For example, if police officers observe an item from a lawful vantage point, that conduct does not amount to a "search" because no privacy interest is violated. *State v. Ainsworth*, 310 Or 613, 617, 801 P2d 749 (1990); *see also State v. Pierce*, 226 Or App 336, 343, 203 P3d 343 (2009) (citing *Ainsworth*).

■       Police are in a location lawfully if an individual expressly or impliedly consents to it. "An officer's right to go to the front door of a house is based on implied consent to allow visitors to take reasonable steps to make contact with the occupant." *State v. Gabbard*, 129 Or App 122, 128, 877 P2d 1217, *rev den*, 320 Or 131 (1994). A person does not impliedly consent, however, to police conduct that violates social or legal norms of behavior. *State v. Campbell*, 306 Or

157, 170, 759 P2d 1040 (1988). "[T]he intrusion to which an occupant impliedly consents is limited. * * * By impliedly consenting to one form of intrusion, an occupant does not necessarily consent to being subjected to other forms of scrutiny as well." *State v. Portrey*, 134 Or App 460, 465, 896 P2d 7 (1995).

In this case, assuming for the sake of argument that there is a basis for implying that defendant consented to the detectives approaching the door of his residence and attempting to make contact with him, there is simply no basis on this record for implying an invitation for the detectives to, as the trial court found, "beg[i]n randomly walking" around the remainder of his property. In the absence of a basis for implying such an invitation, the detectives' actions constituted a trespass, and their observations resulting from that trespass are subject to suppression.

*State v. Ohling*, 70 Or App 249, 688 P2d 1384, *rev den*, 298 Or 334 (1984), is instructive in that regard. In *Ohling*, the officers went to the front door of the defendant's house in an attempt to notify the owner of a rural piece of property that they had a warrant to search a portion of the property for growing marijuana plants. *Id.* at 251. When the officers knocked on the front door, they could hear a stereo playing, but there was no answer. *Id.* at 251-52. The officers then went to the back of the house to see if they could locate someone but found several marijuana plants instead. *Id.* at 252. Noting that the officers' "action was a trespass unless it was privileged or had [the] defendant's express or implied consent," *id.*, we held that "the officers were not in a place where they had a right to be when they saw the marijuana" because they did not have the defendant's implied consent to go to the back of the house, *id.* at 253, 254.

We reached a similar conclusion in *State v. Somfleth*, 168 Or App 414, 8 P3d 221 (2000). The officers in that case, acting on a tip from an unknown informant but without a warrant, entered the defendant's property through a gate from a public alley and walked along a path to the backyard. As they passed the open side door of the garage, one of the officers saw the defendant operating what appeared to be a methamphetamine lab. *Id.* at 417. We concluded that,

because the defendant had not manifested an expectation that casual visitors would use either the side garage door or the back door of the residence, the officers' entry through the gate into the backyard was a trespass and that, accordingly, the officers' observations into the garage were made from an "unlawful vantage point." *Id.* at 427.

In this case, as in *Ohling* and *Somfleth*, the detectives' observations of defendant's marijuana plants inside the greenhouse were not made from a lawful vantage point. Accordingly, their observations amounted to an unlawful search in violation of Article I, section 9. The trial court erred in denying defendant's motion to suppress.

Reversed and remanded.