Submitted May 16, 2013, reversed and remanded January 23, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SANDY HAZEL DANIELSON,
*Defendant-Appellant.*

Yamhill County Circuit Court
CR100216; A149853

323 P3d 971

Peter Gartlan, Chief Defender, and Jedediah Peterson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Douglas F. Zier, Senior Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant appeals a judgment of conviction for unlawfully possessing methamphetamine, in violation of ORS 475.894, and assigns error to the trial court's denial of her motion to suppress evidence, arguing that the warrantless search that led to the discovery of physical evidence and admissions was unlawful.[1] We agree with defendant that the officers illegally entered the bedroom where she was sleeping and that the court therefore erred in denying her motion to suppress. Accordingly, we reverse and remand.

We review a trial court's denial of a motion to suppress for legal error and defer to the court's findings of historical fact if there is sufficient evidence to support them. *State v. Mitchele*, 240 Or App 86, 88, 251 P3d 760 (2010). In March 2010, police received a report from a named person that, while attending an estate sale, she had seen a man lying on a couch, unresponsive. Also, there were reports that people attempting to buy things at the sale had noticed hypodermic needles and white rocks near where the man was passed out on the couch and, concerned for his wellbeing, had unsuccessfully tried to wake him. When officers Schoening and Obregon responded to the dispatch call and arrived at the home to conduct a welfare check, they observed that there was an estate sale sign in front, that people in front of the home were looking at sale items, and that the front door was open.

Upon entering the home, which was a double-wide trailer, the officers noticed that the lights were off and items for sale were set out on tables. The officers could hear snoring coming from the back of the home. Schoening announced himself, and, when there was no answer, the officers walked toward the snoring sound and came upon a man sleeping on a couch in the living room. Near the couch they saw syringes and two glass pipes with residue on them, of the type used to smoke methamphetamine. Eventually the officers were able

---

[1] Defendant also assigns error to the trial court's denial of her motion to suppress (1) statements made at the scene of the arrest because they were made under compelling circumstances and (2) statements made at the police station because the state failed to provide sufficient evidence that she was given a *Miranda* rights warning. We need not reach that assignment of error because we reverse and remand defendant's conviction on her first assignment of error.

to wake the man and, upon searching him, found a crystalline substance that looked like methamphetamine rolled in a plastic baggie. They arrested the man, and Obregon took him outside.

Another police officer, Moreland, arrived and, along with Schoening, set out to find the owner of the trailer home, whom Schoening knew from a previous contact, so that they could inform her that they had arrested a man passed out on her couch, find out what he was doing there, and let her know that her front door was open and that there were people outside unattended at the estate sale. The officers also wanted to check for anyone else "overdosed or under the influence of illegal drugs." They walked back to a bedroom, which was where they previously had heard snoring. The door to the bedroom was open about half an inch. When they opened it, they saw a person sleeping under the bed covers. The officers loudly announced themselves as police and Moreland pulled the covers off defendant, who was not the owner of the trailer home, and shook her to wake her. She woke and sat up. While Schoening talked to her and asked for her identification, Moreland observed on top of a television a spoon with some residue on it and on a desk a half-full syringe. Defendant and Moreland went outside the bedroom and sat at the dining room table. While Schoening and another police officer went to look for the homeowner, Moreland asked defendant about the substance in the syringe and on the spoon. She answered that the substance was methamphetamine. Moreland also asked her if she could show them any track marks on her arms, which would indicate drug use, but she refused. The officers arrested defendant and took her to the police station. There, Schoening read defendant her *Miranda* rights and defendant again admitted that the substance the officers had found was methamphetamine.

We now turn to defendant's contention that the trial court erred when it denied her motion to suppress. According to defendant, the police officers discovered evidence while conducting an unlawful search in violation of Article I, section 9, of the Oregon Constitution. The state counters that the trial court correctly denied the motion

to suppress because the exceptions of implied consent and emergency aid made the officers' entry into the trailer home lawful and that their entry into the bedroom was also lawful because they had the implied consent of the homeowner.

Article I, section 9, protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." A "search" is an invasion by the government of an individual's protected privacy interest. *State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986). Not every invasion, however, is a "search" for purposes of Article I, section 9. *State v. Malvern*, 230 Or App 370, 373, 215 P3d 114 (2009). A police officer can enter a place lawfully if an individual has expressly or impliedly consented to the officer's entrance, but an individual's implied consent is limited and does not extend to "police conduct that violates social or legal norms of behavior." *Id.* (citing *State v. Campbell*, 306 Or 157, 170, 759 P2d 1040 (1988)). Furthermore, any implied consent given for one form of intrusion does not necessarily extend "to other forms of scrutiny as well." *Id.* at 374 (citing *State v. Portrey*, 134 Or App 460, 465, 896 P2d 7 (1995)).

We typically have held that the implied consent exception for approaches "reasonably undertaken to contact" the home's residents does not apply to exploratory searches of a home's curtilage or other outside areas. *State v. Cardell*, 180 Or App 104, 108-09, 41 P3d 1111 (2002) (holding that an officer exceeded any implied consent to walk in the driveway to get to the front door when he touched the tires of a car in the driveway); *see also State v. Olinger*, 240 Or App 215, 221-23, 246 P3d 20 (2010) (concluding that the police did not have implied consent to enter the offshoot of a driveway on the side of a house because the purpose was not to contact persons at the front door); *Malvern*, 230 Or App at 373-75 (holding that the police did not have implied consent to observe marijuana plants inside of a greenhouse that they had discovered after "meandering" around the outside of the defendant's home).

On appeal, defendant contends that the trial court wrongly denied her motion to suppress the physical evidence

discovered by the police and any admissions she made as a result of the unlawful search. The trial court reasoned that the police officers' initial entry into the home was supported by both consent and emergency aid and that, although any emergency had dissipated by the time the bedroom was searched, it was reasonable for the officers to enter the bedroom to contact the homeowner. Accordingly, the trial court ruled that the police officers had the implied consent of the homeowner to enter the bedroom.

According to defendant, the officers' entry into the home was unlawful because, although the public may have had the implicit consent of the homeowner to enter to purchase items from the estate sale, there was no such consent for the officers to come inside to perform a welfare check. Alternatively, defendant contends that, even if the officers had implied consent to enter the home, such consent did not extend to entering a room where someone was sleeping and that did not have items for sale. The state responds that the officers' entry into the bedroom was reasonable because they needed to see if the woman under the blanket was the homeowner so that they could let her know that customers were roaming around her home.

We discuss defendant's alternative argument because it is dispositive. *Malvern*, 230 Or App at 373. Assuming for argument's sake that the police officers' entrance into the home was permissible by implied consent or to render emergency aid, there is no support for the state's argument that there was implied consent for the officers to enter the bedroom. The police officers left the areas of the home that had sale items and where the man was passed out on the couch and proceeded to the back of the home. The door to the bedroom in which defendant was sleeping was ajar only slightly—about half an inch—and the officers could not see defendant or the evidence they later seized. It was not until they opened the door and entered the bedroom that they found the evidence. At that point, their search was not made from a lawful vantage point. Although the police officers may have had the implied consent to approach the trailer home as "reasonably undertaken to contact" its resident, the entrance into the bedroom was not such an approach.

The implied consent exception is limited, and even if it was lawful for the officers to be in one part of the home (a determination we have not made here), that would not mean that they had implied permission to explore the rest of the trailer. Indeed, a bedroom with a door almost completely shut is more private than areas outside a home like a greenhouse or an offshoot of a driveway, the exploration of which we have held were trespasses. The intrusion into a closed bedroom without an invitation was not conduct that we would consider in keeping with "social or legal norms of behavior." Accordingly, the police officers' observations were a result of an unlawful search in violation of Article I, section 9, and, therefore, the trial court erred in denying defendant's motion to suppress evidence.

Reversed and remanded.